# HORINE *v.* WENDE.

---

APPEALS; AMENDMENT; ESTOPPEL BY FORMER JUDGMENT; CLAIMS.

1. The "reasons of appeal," in a patent appeal, are in the nature of the ordinary assignments of error in actions at law or in equity.

2. A reason of appeal filed in the Patent Office with the notice of appeal to this court may be amended so as to make it more specific or to remedy some inadvertence in its preparation, if the amendment is made in due time and no injury is done the opposing party.

3. The doctrine of *res judicata*, or estoppel by former judgment, considered and discussed and authorities upon the subject reviewed.

4. The principle of estoppel by former adjudication is applicable to proceedings of a judicial nature in the Patent Office. (Following *Blackford* v. *Wilder*, 28 App. D. C. 535.)

5. *Quære*, whether the unsuccessful party to an interference is precluded by the decision therein from making a new claim for a generic invention, separate and distinct from a mere specific form, when not estopped by the accrual of rights to other inventors who have in the meantime entered the same field. (Citing *Bechman* v. *Wood*, 15 App. D. C. 484.)

6. Although the unsuccessful party to an interference may possibly have the right to make a new claim to a generic invention distinct from a purely specific one, he cannot, merely by broadening the scope of the former claims to the invention described, successfully bring the subject-matter into litigation again; and in a second interference declared on such broadened claims he will be estopped by the decision against him in the first interference. (Following *Blackford* v. *Wilder, supra.*)

No. 427. Patent Appeals. Submitted March 14, 1907. Decided April 10, 1907.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Reversed.*

The Court in the opinion stated the facts as follows:

This is an interference proceeding involving priority of invention of a manifolding apparatus adapted to make, simultaneously, an original and two or three copies. The original is retained in a record book, while two of the copies, in the form of slips connected in pairs, are adapted to be removed. The invention is primarily designed for use by weighmasters in stock yards; the record of the number and weight of the animals, and the names of seller and buyer, being entered in the record book, and a duplicate slip given to the seller and buyer respectively.

The issue, as declared, contained six counts. The Examiner of Interferences awarded priority to Wende on counts 1, 2, 3, 5, and 6, and to Horine on count 4. Both parties appealed to the Examiners-in-Chief, who affirmed the former decision as to counts 1, 2, 3, 4, and 5, and reversed it as to count 6. Horine alone appealed from this decision as to counts 1, 2, 3, and 5, to the Commissioner of Patents, who affirmed the same. Horine then prosecuted this appeal, which involves said counts 1, 2, 3, and 5, reading as follows:

"1. The combination of a record book, a hinged support connected with said record book and adapted to fold over upon a leaf thereof, an impression sheet secured to said support at a point removed from the hinge thereof, said impression sheet being adapted to fold over upon and present a prepared surface to the surface of said support which is uppermost when it rests upon a leaf of the record book, and one or more copy slips arranged to receive impressions from said impression sheet when it is folded upon said support.

"2. The combination of a record book, a hinged support connected with said record book and adapted to fold over upon a leaf thereof, an impression sheet secured to a free edge of said support and adapted to fold over upon and present a prepared surface to the surface thereof which is uppermost when said support rests upon a leaf of the record book, and one or more copy slips arranged to receive impressions from said impression sheet when it is folded upon said support.

"3. The combination of a record book, a hinged support connected with said record book and adapted to fold over upon a leaf thereof, an impression sheet secured to the edge of said support opposite the hinge thereof and adapted to fold over and present a prepared surface to the surface of said support which is uppermost when it rests upon a leaf of the record book, and one or more copy slips arranged to receive impressions from said impression sheet when it is folded upon said support.

"5. The combination of a record book, a support swingingly connected with said record book, parallel with the side edge thereof, and adapted to fold over upon a leaf thereof, an impression sheet secured to said support near a free edge thereof and adapted to fold over upon and present a prepared surface to the surface thereof which is uppermost when said support rests upon a leaf of the record book, and one or more copy slips arranged to receive impressions from said impression sheet when it is folded upon said support."

The record shows that Melville P. Horine filed his application July 3, 1897, and that Frank J. Wende filed December 21, 1898. On June 19, 1900, an interference was declared between the two in an issue of two counts, to which was subsequently added a third. These read as follows:

"1. A manifolding book comprising primary leaves secured together at one edge, a support hinged adjacent to the free edges of said primary leaves when the book is in position for writing, said support being adapted to be folded upon said primary leaves, secondary leaves secured to that side of said hinged support which is exposed when said support is folded upon said primary leaves, tertiary leaves attached to and adapted to fold over said secondary leaves and transfer paper secured to the book, and comprising prepared surfaces adapted to be disposed in contact with the exposed secondary leaf and the tertiary leaf attached thereto, said transfer paper being movable towards and from the primary leaves with the secondary leaves.

"2. A manifolding book comprising primary leaves secured together at one edge, a support hinged adjacent to the free edges of said primary leaves when the book is in position for

writing, said support being adapted to be turned back upon said primary leaves, secondary leaves secured to that side of said hinged support which is exposed when said support is turned upon said primary leaves, tertiary leaves attached to and adapted to fold over said secondary leaves, quadruplicate leaves arranged one beneath each primary leaf and adapted to be turned therewith, and transfer paper secured to the book and comprising prepared surfaces adapted to be disposed in contact with the exposed secondary leaf and the tertiary leaf attached thereto, and leaving a prepared surface exposed, said transfer paper being movable towards and from the primary leaves with the secondary leaves.

"3. The combination, with a record book, of a base or tablet adapted to be inserted between the leaves of the book, said base or tablet being pivotally mounted parallel with and near the edges of the leaves of the record book, whereby it may be folded over upon and away from such leaves, one or more copy slips or sheets carried thereby, and one or more carbon or impression sheets secured to the free edge of said base or tablet and adapted to fold over and upon the copy slips carried by the base or tablet."

In the preliminary statement of Horine in this interference, it was alleged that he conceived the invention September 1, 1896, explained it to others on or about September 1, 1896, made sketches about September 1, 1896, and a model on or about the same day; that about November 1, 1896, he took steps to have a full-size device made, embodying said invention, which was completed on or about November 15, 1896, and immediately tested and put to successful use. Wende's statement alleged conception about June 1, 1896, explanation to others on or about the same day, construction of a model on or about August 1, 1896, construction of a full-size manifolding book embodying the invention on or about September 1, 1896, and the filling of orders therefor, made by the stock-yards company during January, 1897.

Testimony was taken on the issue joined, and on May 26, 1903, the Examiner of Interferences decided in favor of Horine.

This was in turn affirmed by the Examiners-in-Chief and the Commissioner; the final decision having been made January 2, 1904. On February 20, 1904, Horine filed amendments broadening the claims of the original application, which were further amended from time to time until he succeeded in obtaining the final approval of the Office. Patent was finally issued to him covering some of these broader claims, on January 3, 1905. On February 7, 1905, Wende filed an amendment to the claims of his former application, canceling the former and substituting six new claims, copied in part from Horine's patent. In the letter accompanying this proposed amendment he referred to the fact that his former claims had been rejected under the decision in the interference, and stated that the new claims are designed to cover broadly a structure adapted to accomplish the objects of the invention as they relate to providing a book of the type shown in U. S. Patent No. 556,484, "so constructed and arranged that the leaves which receive original entries may be retained in the book as a permanent record, as set forth in the statement of the objects of the invention." He then further stated:

"In the interference in which this application was involved, attorney for applicant urged, among other things, that Wende was entitled to an award of priority of invention of the issues for the reason that 'Horine Exhibits Wende Books Nos. 1, 2, and 6' were a reduction to practice of the issues, and antedated Horine's date of conception. The Commissioner held that these exhibits were not reductions to practice of the issues of the invention, but that they had broad features in common with the invention in controversy, and that it was possible that those broad features were patentable. Since the decision of said interference a patent has issued to Horine, the other party to said interference, containing claims which cover the invention broadly.

"New claims have therefore been prepared, covering these broad features, applicant being confident that he can establish to the satisfaction of the Patent Office officials that he was the

prior inventor of the broad features referred to by the Commissioner.

"In order to determine the question of priority as it relates to the invention of the broad issues, applicant has also included in his amendment claims, copies from said patent to M. F. Horine, issued January 3, 1903, No. 779,042.

"To establish his claim of priority as regards the broad invention, applicant will rely largely upon the books or apparatus relied upon by him in the former interference, and identified as 'Horine Exhibits Wende Books Nos. 1, 2, and 6.'"

The application, with the amended claims, was allowed, and February 28, 1905, the present interference was declared between the applicant and the patentee, Horine, the issue of which, and the proceedings thereon in the Patent Office, have been hereinabove recited.

The amendments of each party after the determination of the first interference related to the claims of each applicant; the description and specifications remain as originally made.

Horine moved to dissolve this second interference on the ground, among others: "That Wende is estopped, by reason of the adverse final decision in a former interference between the same parties on the same applications, from making the claims of the issues." This motion was sustained by the Primary Examiner, but on appeal to the Commissioner his decision was reversed, and the motion to dissolve denied.

The parties entered into a stipulation making all of the depositions in the former case, and all exhibits in connection therewith, evidence in the pending case, and further providing that the record of each party in the present case shall consist of his record in the former case, together with all exhibits offered in connection therewith, and any additional depositions, exhibits, or other evidence that may be offered. Wende took the depositions of several witnesses in addition to the evidence taken in the former trial case. Horine relied upon his former record.

Wende's second preliminary statement alleged conception "during the summer of 1896," explanation to others during the same summer, the making of full-size books embodying the in-

vention, during the latter part of August, 1896, and others about January 1, 1897, which were used by the stock-yards company in January, 1897. This statement is substantially the same as the one in the first interference.

*Mr. Albert H. Adams, Mr. Charles E. Pickard,* and *Mr. John L. Jackson* for the appellant.

*Mr. George E. Waldo* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Before proceeding to consider the first question in order, which is the effect of the decision in the first interference, that the appellant contends was a final determination of the matters involved in the second, a preliminary question must be disposed of.

Before an appeal can be taken from an appealable decision of the Commissioner of Patents to the court, notice and reasons of appeal must be filed in the Patent Office within forty days (exclusive of Sundays and legal holidays) from the date of the decision appealed from; and petition for appeal to this court, with a transcript of the record, must be filed within forty days (exclusive of Sundays and legal holidays) from the time of giving the notice of appeal before mentioned. Notice of this appeal was given January 7, 1907, and reasons of appeal filed therewith. The ninth reason is: "That the Assistant Commissioner erred in not awarding priority of invention as to counts 1, 2, 3, and 5 to Horine, and in awarding priority as to such counts to Wende." On February 1, 1907, notice was served on Wende's attorney of record, to the effect that under the ninth reason of appeal, aforesaid, appellant would ask a reversal of the decision on the ground that the decision in the former case was conclusive of the matters litigated in this interference. Pursuant to this notice of amendment the same was filed in the Patent Office on February 14, 1907, and made a part of the

transcript of the record filed in this court February 18, 1907. The petition for appeal filed in this court in accordance with its rules specifically assigns this as one of the questions to be determined on appeal.

Without considering the point whether this court will take notice of a fundamental error, apparent upon the record, that may not have been specially assigned in the reasons of appeal,—which is in the nature of the ordinary assignment of error in actions at law or in equity,—or whether the particular error is embraced within the ninth reason of appeal, as broadly written, we are of the opinion that the amendment of the reasons of appeal should be entertained. Neither the rules of this court nor of the Patent Office mention amendments to the reasons of appeal; but when made, in due time, to correct an assignment that may not be sufficiently specific, or some inadvertence in its preparation, and no possible injury could be done the opposing party, we see no reason why it should not be permitted. No injury whatever can be done by entertaining the amendment in this case. The record shows that the point was mainly relied on at each hearing in the Patent Office; it is made in the petition for appeal to this court; the opposing party was promptly notified, and admits that he has had ample time to meet the contention. The matter of consideration is one within the exercise of the discretion of this court.

The doctrine of *res judicata,* or estoppel by former judgment, is thus stated by Mr. Justice Harlan, delivering the opinion of the Supreme Court of the United States: "The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very objects for which civil courts have been established, which is to secure

the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them." *Southern P. R. Co.* v. *United States,* 168 U. S. 1, 48, 42 L. ed. 355, 376, 18 Sup. Ct. Rep. 18. "The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists, even though there be different demands, when the question upon which the recovery of the second demand depends has, under identical circumstances and conditions, been previously concluded by a judgment between the parties or their privies." *New Orleans* v. *Citizens' Bank,* 167 U. S. 371, 396, 42 L. ed. 202, 210, 17 Sup. Ct. Rep. 905.

In another case upon which the appellee strongly relies in denial of the estoppel in this case it was said: "It must appear, either upon the face of the record or be shown by extrinsic evidence, that the precise question was raised and determined in the former suit. If there be any uncertainty on this head in the record,—as, for example, if it appear that several distinct matters may have been litigated, upon one or more of which the judgment may have passed, without indicating which of them was thus litigated, and upon which the judgment was rendered, —the whole subject-matter of the action will be at large and open to a new contention, unless this uncertainty be removed by extrinsic evidence showing the precise point involved and determined." *Russell* v. *Place,* 94 U. S. 606, 608, 24 L. ed. 214, 215. That was a suit for the infringement of a patent, and the question was the effect of a former judgment recovered by the complainant against the defendant in an action at law for the infringement of the same patent. The answer admitted the recovery of that judgment, but denied that the same issues were involved or determined therein. There was no extrinsic evidence relating to the issues that were determined, and the

question had to be decided upon the record of the former case. The declaration, in general terms, charged the infringement of the patent by use of the invention of the defendant. The court said: "The patent contains two claims: one for the use of fat liquors generally in the treatment of leather, and the other for a process of treating bark-tanned lamb or sheep skin by means of a compound composed and applied in a particular manner. Whether the infringement for which the verdict and judgment passed consisted in the simple use of fat liquor in the treatment of leather, or in the use of the process specified, does not appear from the record. A recovery for an infringement of one claim of the patent is not of itself conclusive of an infringement of the other claim, and there was no extrinsic evidence offered to remove the uncertainty upon the record: it is left to conjecture what was in fact litigated and determined. The verdict may have been for an infringement of the first claim; it may have been for an infringement of the second; it may have been for an infringement of both. The validity of the patent was not necessarily involved, except with respect to the claim which was the basis of the recovery. A patent may be valid as to a single claim, and not valid as to the others. The record wants, therefore, that certainty which is essential to its operation as an estoppel, and does not conclude the defendants from contesting the infringement or the validity of the patent in this suit."

The judgment or decree in the former case is not conclusive in the latter one as to matters which might have been decided, but only to those which were in fact decided. *Cromwell* v. *Sac County,* 94 U. S. 351, 353, 24 L. ed. 195, 198; *Last Chance Min. Co.* v. *Tyler Min. Co.* 157 U. S. 683, 687, 39 L. ed. 859, 861, 15 Sup. Ct. Rep. 733. The issue of the estoppel is that there has been a judicial determination of the fact; and this includes every fact put in issue and necessary to the judgment or decree, whether expressly recited therein or not.

To determine, then, what has been adjudicated in the former litigation on which the claim of estoppel is founded, resort is had to the material facts alleged with certainty in the declara-

tion or bill on which the plaintiff's right to recover is founded; and a general judgment thereon is conclusive of such facts. Hence a final judgment by default or upon demurrer is as efficacious as one rendered after contest between the parties. *Last Chance Min. Co.* v. *Tyler Min. Co.* 157 U. S. 683, 690, 691, 39 L. ed. 859, 862, 863, 15 Sup. Ct. Rep. 733. In addition, where there was a contest the finding or opinion of the trial court may, if necessary, be looked to, to render certain that which might otherwise be uncertain. *Ibid.* See also *New Orleans* v. *Citizens' Bank,* 167 U. S. 371, 402, 42 L. ed. 202, 212, 17 Sup. Ct. Rep. 905. This principle of estoppel by former adjudication is equally applicable to proceedings of a judicial nature in the Patent Office. *Blackford* v. *Wilder,* 28 App. D. C. 535, 542.

The difficulty in the application of the principle, that so frequently occurs in ordinary litigation, is often increased by the peculiar character of the proceedings in the Patent Office. The proceedings are *ex parte* during the process of amendment, under the suggestions of the Office, leading up to the allowance of the application; and it is only when the interference has been declared and the preliminary statements of the conflicting parties filed, that either has information of the proceedings of the other. The issue of the interference is prepared in the Patent Office. There are no formal pleadings. The applications which contain the descriptions of the invention, and the claims that relate to the matter of the issue, are the foundations of the case. The preliminary statements are required merely to give the respective dates of conception and reduction to practice of the invention described in the application, thereby fixing the boundaries of the evidence relied on for their establishment. To ascertain what facts have been finally adjudicated in an interference, resort must be had to the several applications, the preliminary statements, the claims in issue, the evidence produced, and the decisions of the tribunals of the Patent Office. These decisions, unlike the ordinary judgments of courts of law, are opinions reciting the grounds upon which the award of priority is made, consisting of conclusions in respect of matters both of law and fact.

In this case we have before us the entire record of the former interference, including the applications and claims of the respective parties, their preliminary statements, the evidence and exhibits, as well as the decisions of the several tribunals of the Patent Office which passed on the case in succession. But little additional evidence has been given in the present case, and that wholly on behalf of the appellee. The determination of the second case depended, in the main, upon the evidence introduced in the former case.

The conditions recited are analogous to those presented in the recent case of *Blackford* v. *Wilder,* 28 App. D. C. 535, in which it was held that the decision in the first interference between the same parties was conclusive of matters litigated in the second. There are some differences between the two cases, it is true, but they do not materially affect the application of the governing principle. In *Blackford* v. *Wilder* somewhat broader claims had been narrowed, pursuant to the requirements of the Office, in order to obtain allowance of patentability at all. After final award of priority to Blackford, by judgment of this court reversing the decision of the Commissioner, Wilder was permitted to amend his claims. His amendment broadened the former claims by omitting a specific feature of the issue of the former interference. This, if finally allowed, would have enabled him to obtain a patent dominating that to which Blackford had become entitled by reason of the final judgment before rendered in his favor. On the amended claims another interference was declared between him and Blackford. Wilder's application had been drawn upon a construction called Exhibit E, on which he had chiefly relied in the former interference as evidence of his completion of the invention of the issue therein. He was permitted in the second case to introduce evidence to show that this exhibit had in it the necessary lighting member when produced in the first case. Of the construction of this exhibit there was no doubt, but the existence of the lighting member was one of the questions expressly decided against him. His amended claims broadened the invention into a claim for a burner omit-

ting the particular lighting member, but in other respects covering the invention described in his and Blackford's applications. The award of priority in the second case to Wilder was reversed on the ground that the decision in the former case was conclusive of the matter in issue. It was said: "The parties are the same. The applications are the same, and disclose the invention of each issue. The constructions relied on, respectively, as evidencing conception and reduction to practice of the invention of both issues are the same. The fundamental facts of both cases are the same." Reference was made to the peculiar conditions of practice in the Patent Office permitting amendments after decisions in interference, and to rules thereof, devised to meet, by the application of the principle of estoppel by former decision, as far as possible, conditions that would necessarily call therefor. One of the early decisions of the Commissioner of Patents was also referred to, in which the rule was declared that, while a defeated party might be allowed to make additional patentable claims that could not be made by the prevailing party, none such should be allowed that could by any latitude of construction be held to embrace matter common to the structures of both parties. 56 Off. Gaz. 141. In *Corry & Barker* v. *Trout* v. *McDermott,* 110 Off. Gaz. 306, it was again said by the Commissioner: "The declaration of a second interference between the same applications should be necessary only in rare cases and under very exceptional circumstances. It should not ordinarily be declared upon claims to the same device and differing from the first issue merely in scope. If a mere change in the scope of claims were considered good ground for a second interference, the number of successive interferences between the same parties would be practically unlimited, and the interference procedure would become an intolerable burden to applicants. The Office is justified in taking the decision as to priority of invention as prima facie evidence that the successful party was the first inventor, not merely of the particular issue in controversy, but of the invention common to the two cases, whether more broadly or more specifically stated. The burden is upon the defeated party to show special circumstances of the

particular case which make it improper to apply the decision
to the other claims presented. It is not sufficient that the claims
differ, and that it is theoretically possible for one party to be the
prior inventor as to the first, and the other party prior inventor
as to the second, for this would apply in all cases where the
claims are not identical."

It was also said in *Blackford* v. *Wilder, supra,* that the prin-
ciple to be applied is the same declared in the case of two patents
issued to the same party, where, to be valid, the second, if it
covered matters described in the first, must be for something
essentially distinct and separable from the invention covered by
the first. *Miller* v. *Eagle Mfg. Co.* 151 U. S. 186, 198, 38 L. ed.
121, 127, 14 Sup. Ct. Rep. 310.

In the case at bar the amended claims were first presented by
and patented to Horine, and subsequently adopted by Wende;
but it is not perceived that this makes any substantial difference
between the two cases. The question nevertheless remains:
What was determined in the first interference? It is unfortu-
nate, perhaps, that the Patent Office practice permits amendment
by the successful party to broaden the scope of his claims after
a final decision in an interference upon claims for the same in-
vention narrower in scope. That question, however, is not be-
fore us.

Assuming, for the purposes of this case, without so deciding
this time, that Wende would not be precluded, by the decision
in the first interference, from making a new claim for a
generic invention, separate and distinct from a mere specific
form (when not estopped by the conditions stated in *Bechman*
v. *Wood,* 15 App. D. C. 484, and cases therein cited), we will
inquire whether there is such a distinction between his new
claims and those involved in the issue of the first interference.

The invention described is of a manifolding copying book,
the hinged support of which, used in connection with the record
book and adapted to fold over so that one or more copy slips
may receive the impression, and be withdrawn for delivery to
the buyer and seller, is the essential feature, as shown by its re-
currence in the counts of each issue. That Wende considered

and urged that the counts of the first issue covered his entire invention, as described in his application, appears plainly in the decisions in the former case. His stock-yards' book represented the improved form of his invention, and, it is said in the decisions in the present case, also embodied all of the counts of the present issue. This, however, was held, in the former case, to have been made subsequently to Horine's established date of reduction to practice. In addition thereto Wende relied upon said exhibits 1, 2, and 6. In considering them the Commissioner said in his then decision: "It may be admitted that exhibits 1, 2, and 6 and the invention here in issue have certain features in common, and it is possible that those common features are patentable, but the issue contains limitations to features not present in both exhibits." He then proceeded further to say: "One essential feature of this arrangement (that of the issue) is a support hinged adjacent to the free edges of the adjacent leaves. The support is adapted to be fold upon the primary leaves, and the secondary leaves are secured to it and carry the tertiary leaves. This hinged support is not present in exhibits 1, 2, and 6, and consequently neither the leaves nor the carbon sheets are attached together and arranged in a way called for by the counts of the issue. If by a strained construction of the term it can be said that there is a support for the secondary leaves, it is not a support having the purpose and function of that in the present devices, and is therefore not the support called for by the issue."

The hinged support connected with the record book and adapted to fold over for the making and removal of copy slips is clearly the controlling feature of the combination in both issues, and the only reason for holding in the first case that exhibits 1, 2, and 6 did not embody the issue is on the specific ground, as stated by the Examiners-in-Chief in their decision, "that they do not have these secondary and tertiary leaves secured to the hinged support or carried by such support." It is the omission of these secondary and tertiary leaves that served, in their opinion, to distinguish the one issue from the other.

Wende may have been right in his view that exhibits 1, 2,

and 6 were sufficient to show conception, at least, of the invention of the first issue, as described in his application, without further broadening his claims so as to have a like broadening of the issue, in anticipation of technical objections. And the Commissioner may have been in error in his conclusion as regards this point; but whether so or not is not now an open question. Wende, satisfied with his own view, took his chances upon the issue as framed, and, when defeated by the construction given to the issue and to his said exhibits, failed to appeal from the adverse decision. Whether that decision was right or wrong cannot affect its operation as an estoppel. Having acquiesced in this decision, in that he failed to take a further appeal, he might, as above assumed, have made a new claim to a generic invention distinct from a purely specific one, if the former may be so regarded; but he could not, by merely broadening the scope of the former claims to the invention described, bring the subject-matter into litigation again.

In our opinion, these broadened claims do not present the case of a generic invention separable and distinct from the matters covered by the former issue. As admitted in the decision of the Commissioner before quoted, in which he declared that the exhibits did not show a necessary feature of the first issue, they and the invention in issue "have certain features in common." He declined, however, to give them what he called "a strained construction," that would bring them within that issue. As before suggested, he may have been in error in refusing this construction. Be that as it may, however, the most that we are able to say of the amended claims now is that they differ from those of the adjudicated issue in scope merely. We are constrained to hold that this brings them under the rule as applied in *Blackford* v. *Wilder, supra,* and the Patent Office and other decisions recited therein with approval.

As this conclusion necessarily disposes of the appeal, there is no occasion to consider any other question in the case.

For the reasons given, the decision appealed from will be reversed; and it is so ordered. The clerk will certify this decision to the Commissioner of Patents.                    *Reversed.*