54 CCPA

**Application of Milton E. HERR.**

**Patent Appeal No. 7751.**

United States Court of Customs and Patent Appeals.

May 11, 1967.

Almand and Kirkpatrick, JJ., dissented.

Eugene O. Retter, Kalamazoo, Mich., The Upjohn Company, Gerard A. Blaufarb, Kalamazoo, Mich., for appellant.

Joseph Schimmel, Washington, D. C., for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH, and ALMOND, Judges, and WILLIAM H. KIRKPATRICK.*

WORLEY, Chief Judge.

This appeal is from the decision of the Board of Appeals affirming the *res judicata* rejection of claims 1–3 of appellant's application [1] for "Organic Compounds," wherein the board stated:

The sole rejection is on the ground of res judicata arising from the prosecution of appellant's parent application, Serial No. 583,923, culminating in a decision by the United States Court of Customs and Patent Appeals, In re Herr, 50 CCPA 705, * * * 304 F.2d 906, 134 USPQ 176. Claims 1, 2 and 3, here on appeal correspond exactly to claims 1, 4 and 3, respectively, adjudicated in the prior application. The claims of the parent application were held to be obvious from a cited reference *and the attempted showing of unexpected androgenic and anabolic activity was refused consideration because that application did not disclose such activity.*

    *    *    *    *    *    *

The Examiner holds that *inasmuch as the instant claims are identical with the claims previously held unpatentable in the parent application, res judicata bars the allowance of the claims herein.* (Emphasis supplied.)

---

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Serial No. 223,816, filed September 14, 1962.

Before termination of proceedings in appellant's parent application,[2] the present application was filed, disclosing that the claimed compounds *do* possess anabolic and androgenic activity. In a sense, appellant has purged the prior application of the defects in the disclosure which we found dispositive in our earlier *Herr* opinion, thus laying the foundation for admission of the Stafford affidavit referred to in that opinion, 304 F.2d 906, 50 CCPA at 707. Additional affidavits of Stafford and one Lyster were submitted to detail and confirm the results described in the earlier affidavit.

Although the examiner held that appellant's new evidence of nonobviousness overcame the original rejection under 35 U.S.C. § 103,[3] he nevertheless invoked the doctrine of *res judicata* as a bar to appellant's claims. The board affirmed, apparently feeling that principles derived from its own decisions, as well as those of this and other courts,[4] required application of *res judicata*. We do not agree.

Granted the instant parties and claims are *identical* with those of the parent

*Herr* application and, in a *broad* sense, the issue in the original appeal was, as here, whether those claims were allowable in view of the prior art. More to the point, however, the precise issue in the prior *Herr* appeal was whether appellant was entitled to allowance of his claims in the *application* and *record then* on appeal. The precise issue here is whether appellant has legally established his right to those claims in the *application* and *record now* before us. We think he has.

■ That *different* issues of patentability are indeed presented by the two records is evident from the totally different treatment accorded appellant's claims by the Patent Office. On the *original* record, including the defective specification and inadmissible Stafford affidavit, the claims were found *unpatentable* over the prior art. On the *present* record, including the amended specification and now admissible affidavit, the identical claims are found *patentable* over the prior art.[5]

2. This court issued its final order to the Patent Office on November 2, 1962.

3. "In view of the difference of kind disclosed in the affidavit," said the examiner, "*the rejection predicated upon the Herr and Sondheimer et al references is no longer applicable.*"
   The board agreed:
   * * * In essence, appellant urges that he has a new application which entitles him to a new adjudication of the patentability of the appealed claims, including consideration of the evidence previously refused consideration in his parent application. *Upon such new adjudication, the appealed claims must be found patentable over the art, the Examiner having withdrawn the references.* (Emphasis supplied.)

4. Numerous decisions are cited, pro and con, involving the doctrine of *res judicata*, a creature of the courts, not of Congress. We have examined them all, including In re Szwarc, 319 F.2d 277, 50 CCPA 1571, so heavily relied on by the solicitor, without finding any one so directly in point with the facts here as to be controlling. The board, while regarding In re Lundberg, 280 F.2d 865, 47

CCPA 1140, as "most authoritative and best express [ing] the principles which should guide us," found no case expressly in point, stating:
   Factually, the Gustavson et al. [14 USPQ 332] and Schott [136 USPQ 383] cases, supra, cited by appellant, and the Ittner [85 USPQ 24] and Prutton [40 CCPA 975, 204 F.2d 291, 97 USPQ 447] cases, supra, included in our list, come closest to the facts of the present case, *although none is identical in every respect.* In these cases, new evidence was introduced in the second proceeding to support the patentability of the appealed claims. In the two cases relied upon by appellant, the rejection was reversed; in the other two cases, the rejection was affirmed. (Emphasis supplied.)
   We note that the board, sitting en banc, declined to follow *Schott* in Ex Parte Budde, 150 USPQ 469.

5. We note the somewhat irreconcilable provisions of The Manual of Patent Examining Procedure, § 706.03(w), as applied to the facts here:
   A prior adjudication against the inventor on the same or similar claims

■ The Patent Office, in discharging its duties to the public, has commendably required applicants for patents to provide an adequate quid pro quo in exchange for the monopoly sought. It should be equally alert in protecting the rights of applicants who have legally and properly established such a right.[6] To do otherwise would be to unjustly enrich the public at the expense of the inventor, a result we feel confident Congress could not have intended.

We appreciate, but are inclined to discount, the somewhat exaggerated fears of the Patent Office of the potential procedural bedlam resulting from our holding here. In the first place, we fail to see why, as a practical matter, an applicant would deliberately embark on a procedure necessarily involving the time, trouble, expense, risks, delays and uncertainties attendant thereon. The second, and overriding, reason is that Congress has authorized [7] the course appellant has followed, and doubtless expects compliance by the Patent Office and the courts. That is what we seek to do here.

The decision is reversed.

Reversed.

RICH, Judge (concurring).

The Board of Appeals wrote a carefully reasoned opinion (Mar. 29, 1965) in this case and, a year afterward, gave extensive *en banc* consideration to the problem of res judicata in the Patent Office. Ex parte Budde, 150 USPQ 469 (Mar. 14, 1966).[1] The *en banc* consideration

was stated to have been "because of the importance of the legal issue," and it is indeed important. It is also a question of some difficulty and much confusion.

In deciding this case the board majority placed primary reliance on two of our decisions, *Lundberg* and *Prutton*. As to the first it said:

> In our opinion, the case of In re Lundberg et al., 47 CCPA 1140, 1960 C.D. 478, 761 O.G. 582, 280 F.2d 865, 126 USPQ 412, is most authoritative and best expresses the principles which should guide us.

As to the other it said:

> In re Prutton, supra [40 CCPA 975, 204 F.2d 291, 97 USPQ 447] is, in our opinion, extremely pertinent
> \* \* \*.

\*   \*   \*   \*   \*   \*

It is our view that the case of In re Prutton dictates affirmation of the res judicata rejection in the present case.

In *Budde* the board again felt itself bound by *Lundberg* and *Prutton*. The solicitor's brief likewise relies on these cases.

I am glad to have had the opportunity to consider the extensive dissenting views of Judge Almond who also seems to feel that *Lundberg* and *Prutton* have controlling effect here, along with others of our decisions.

Thus the question before us is, to a large extent, whether *Lundberg* and *Prutton* control or whether they are distinguishable and should be distinguished.

---

constitutes a proper ground of rejection as *res judicata*. Where a different question of patentability is presented the rejection of *res judicata* does not apply.

It should be readily apparent that the mere fact the present claims are identical to those sought to be patented earlier is not, of itself, necessarily determinative of whether the same issue, cause of action, or "question of patentability" is involved in the two proceedings.

6. Theories and assumptions of what appellant *might* have done before appealing to this court are not for us to pass on. Our concern is with what he actually *has* done

in seeking to establish and protect his rights. The Patent Office has not challenged appellant's right to proceed as he has.

7. See, for example, 35 U.S.C. § 120.

1. Thirteen members of the board participated, lacking but one member who disqualified himself. Three opinions were written, the two members who had been on the board deciding Ex parte Schott, 136 USPQ 383, disagreeing with the repudiation of that case by the majority. A third member appears to have felt that *Schott* should have been distinguished on its facts.

When we decide, as we do, that a holding of res judicata herein is improper, we at least owe the board, which has tried to follow those precedents, and the bar, some explanation of why we so hold. It does not seem to me sufficient to say merely that neither case is identical in every respect or directly in point. The board thought they were authoritative, pertinent, and controlling, and said so. Herein I try to say why I do not agree. As the author of the *Lundberg* opinion I feel that I in particular owe an explanation of why I think it does not compel an affirmance here.

As I have often found it necessary to point out, what is *said* in an opinion is the result of the questions raised and arguments made in the case being discussed. While what is said may make sense in that context it does not necessarily do so when lifted therefrom and applied to a different situation. That is what appellee attempts here with respect to *Lundberg*. As is being so vociferously pointed out by all those opposed to the result which we of the majority here reach, *Lundberg* does talk about the *claims* determining whether the issue in the second case is the same as it was in the first case because in *Lundberg* that *was* what determined it. What was said in the opinion was in answer to the appellants' contention that there was a different issue *because* the claims were different and in the opinion we were engaged in demonstrating that that particular argument was unsound. No other argument was made to show that there was a different issue.

In *Lundberg* what the appellants were trying to get us to do was to *reconsider* the patentability of the invention over the prior art and reverse ourselves on the same question, using as an excuse that there were differences in the claims which made new issues. What we were doing in the opinion was analyzing their arguments and pointing out that despite verbal changes the same patentability issue was still being presented for our consideration in view of the same prior art. Our attention was focused on the claims because the argument was based on them and so, in consequence, was our opinion. Such statements as "If the claimed subject matter is the same, the prior adjudication is binding" were made about the fact situation before us in *Lundberg* and were not being uttered as rules of general applicability to other fact situations, certainly not as guiding "principles," which the board appears to have taken them to be.

The net effect of the *Lundberg* decision was that we *will* refuse to *reconsider* the *same* question of patentability *merely* because a few immaterial language changes have been made in the claims. Likewise, for the same reasons we felt the examiner and the board were justified in not reconsidering their decisions. The application of the principle of res judicata was but a convenient and conventional legal way of saying that we would not go over the *same* arguments we had already been over, as though on a rehearing, and that the like view of the Patent Office was justifiable.

The present case does not present a comparable situation. The question now is whether the claimed invention is patentable in view of evidence of unexpected advantageous properties we felt we should not consider in the prior case (whether rightly or wrongly I do not say), plus additional evidence. The issue in the prior case was section 103 obviousness in view of closeness of structure to the reference compound without that evidence. The holding was that the *attempted* showing of properties did not overcome the obviousness rejection because there was no disclosure of such properties in the specification, for which reason the evidence would not be considered. On this second application the specification *does* contain the disclosure, the Patent Office *has* looked at the evidence, and has decided that the claimed compounds are *not* obvious. The Patent Office has already reviewed the question of patentability on the merits but, having done so, says its former stand, now changed, must be adhered to only because decisions of this court compel it.

On this second application, the Patent Office has been entirely satisfied that Herr is entitled to his patent *under the patent statute* but takes the position that this court says he must not have it. I find nothing in *Lundberg* to compel such an anomalous result.

I do not mean to imply that the fact the Patent Office has already considered the merits of the rejection has anything to do with our decision here. I shall discuss later its obligation to do so.

In re Prutton, the other case principally relied on below and in the dissent, was cited in *Lundberg*. The question in *Prutton* was whether the *issue* was the same as the issue passed on by the Court of Appeals for the District of Columbia on a parent application, of which the application on appeal was a continuation-in-part. As Judge Almond's dissenting opinion tends to indicate, the facts in *Prutton* are much closer to those here than the facts of *Lundberg*. As here, on the second application the board accepted affidavit evidence not before it on the first application and reversed a rejection on a reference while sustaining the res judicata rejection.[2] This court approved. The *Prutton* opinion, citing a number of cases, seems to derive from them a rule, which it followed, to the effect that the claims of the second application must be "patentably different" from the claims previously adjudicated in order to avoid a holding of res judicata. It then embarked on a determination of whether the claims were patentably different and, finding they were not, affirmed the res judicata rejection, notwithstanding the opinion of the board that the claims were patentable over the reference. I cannot clearly distinguish *Prutton* from this case and therefore I have great sympathy with the view of the board that it dictates an affirmance. I likewise necessarily sympathize with the dissent. My position on *Prutton*, after giving it and the precedents it relies on in turn careful study, is that it reach-

ed the wrong conclusion and should be overruled. In my opinion, at least with respect to the reference the board found to be overcome by the affidavit evidence on the new application, a *new issue* of patentability was presented and a decision thereon in applicant's favor would not "nullify the decision of the Court of Appeals in the earlier case." That court had a different issue before it, a different patentability problem.

As the opinion of the board here, with its reference to many cases pro and con, and any independent examination of the question, will amply demonstrate, the past history of res judicata in ex parte Patent Office cases is a history of inconsistency. The Fourth Edition of McCrady's Patent Office Practice deals with the subject in Sec. 138, amply footnoted with citations, the general tenor of which is that the Patent Office may or may not apply res judicata in any given situation, prefacing the discussion with the statement that

> The Patent Office is not a "court", and because it is not a court it cannot render a "judgment", hence its decisions or other actions cannot give rise to "res judicata" in the strict legal sense of that term.

There next follows a quotation from one of the earliest cases in the field, Barratt v. Duell, 14 App.D.C. 255, 1899 C.D. 320 (cited by Judge Almond as "In re Barratt's Appeal") which set at an early date the noncommittal tone of the subsequent accumulated decisions on this subject. Therein the court concluded by saying:

> In what we have said we do not desire it to be understood that the Patent Office may not, *if* it thinks proper so to do, *entertain and adjudicate a second application* for a patent after the first application has been rejected. What we decide is, that it is not *incumbent* upon the office as a duty to entertain such applications,

2. There were two additional rejections on separate prior art references, besides the one the board reversed, which the court did not reach because of its affirmance of the res judicata rejection.

and that, *if* it refuses to entertain them, it has a perfect legal right so to do. [Emphasis added.]

I suggest, in passing, that the statement is meaningless unless taken to mean that on a new application the Office need not *reconsider on the merits* the same *arguments* previously made on an earlier application since I know of no way in which it can refuse to "entertain and adjudicate" any complete application filed with the prescribed fee. It is necessary, even to arrive at a res judicata rejection, to "entertain" an application and consider it to the extent of carefully determining its relation to the previous application. By the time an examiner has finished consideration of this point, as illustrated by what happened in both this case and *Prutton,* he may very well be in a position to say that on the record the claims are patentable under the statute and that he would allow them but for decisions of the court that he should apply "res judicata" to deny them.

Res judicata is a judicial doctrine the purpose of which is to settle *disputes* and put an end to *litigation,* enforcing ultimate repose. This is a matter of public policy, and a good one when applied to the situations for which it was designed. But the ex parte prosecution of patent applications cannot properly be characterized as either dispute or litigation. Moreover, there is another public interest to be considered, inherent in the patent laws, which is to bring *patentable* inventions into the open through *granting* patents on them.[3] And in addition to the technological disclosure aspect of the patent grant is the further service to the public it performs in pro-

viding an incentive to *commercialize* the invention, thereby giving the public not only knowledge but usable commodities. Society stands to lose when a patent is refused on an invention patentable under the statute.

This patenting process has little in common with the settlement of disputes between wrangling private parties and certainly its object is not to bring about peaceful repose in society. Its object is, on the contrary, to produce industrial and economic ferment and to goad inventors and entrepreneurs into activity through basic psychological appeals to self-interest. The public interest calls for the grant of patents on every invention patentable according to the tests laid down in the patent statutes. The Patent Office has ruled that such an invention is present here and has raised only the legal theory of res judicata as an obstacle to its patenting. In doing so I think it misapplies the theory.

The *Prutton* opinion rests on the following precedents as authority, which I list and shall discuss in chronological order: Blackford v. Wilder, 28 App.D.C. 535, 1907 C.D. 491; In re Edison, 30 App.D.C. 321, 1908 C.D. 327; In re Ellis, 24 CCPA 759, 86 F.2d 412, 31 USPQ 380 (1936); and Hemphill Co. v. Coe, 74 App.D.C. 123, 121 F.2d 897. Citing *Ellis* three times, *Hemphill* twice, and the others once, the court appears to derive its "patentably different" rule merely from certain words in those opinions without too much thought for their context, a rule clearly in conflict with the result we now reach. Since Barratt v. Duell, supra, is referred to in each of the above cases except *Ellis,* and in

---

3. In this connection I cannot refrain from commenting on the following incredible passage at the end of the solicitor's brief:
  At the present time no Patent exists on the claimed compounds. If appellant obtains the relief he seeks, namely a patent on those compounds, *the public right to be free of the patent monopoly* is surely impaired. [Emphasis added.]
The public has no right to be free of a patent monopoly *on* the compounds un-

less it has a right *to* the compounds. The determination of the Patent Office in this very case that they are patentable, in the absence of a holding of res judicata, is proof enough that the public has no right to them, that they are not in the public domain. Why, then, has the public a "right to be free of the patent monopoly"? If the solicitor means that res judicata gives the public the right to them, then he is assuming the very point he is trying to prove.

Judge Almond's dissent, I will first comment on it.

*Barratt* was a case in the Court of Appeals for the District of Columbia in 1899 when that court was the sole reviewing court for the Patent Office. The same court had previously considered an earlier application on the same invention. Barratt v. Seymour, 11 App. D.C. 177, 1897 C.D. 506. In that first case the court's opinion had suggested that the applicant file a bill in equity under R.S. 4915, a procedure then permitted even after appeal. Instead, he filed a new application "for the same subject matter * * * with more full and ample specifications and drawings, a more thorough showing of the prior condition of the art, and evidence bearing on the patentability of the alleged invention." The Commissioner rejected on the ground of "res adjudicata" by reason of the court decision and *also* for "want of patentable novelty." The court affirmed. The court's inconclusive view of the binding effect of its prior decision has been quoted above. What seems to impress the author of the dissenting opinion here is the series of questions the court asked itself:

██ * * * after exhaustion of the manifold right of appeal allowed to him by the great liberality of the patent laws [there were more appeals then than now], why should a second application be allowed or entertained? [2] Is there any reason why the determination of the matter should not be regarded as conclusive? [3] If a second application could be regarded as proper, why not ten or twenty successive applications? [4] Where are the applications to stop, and what would become of the public business, if it were in the power of one person to obstruct the operations of the Patent Office by repeated and persistent applications? These questions answer themselves.

Far from being an able expression of the public policy considerations which should apply, this impresses me as a burst of rhetoric considerably removed from reality. Answering these questions in sequence, [1] Allowing and entertaining an application must be distinguished. The Patent Office has to entertain every application. Allowance depends on compliance with the statutory prerequisites. The second application may comply whereas the first did not. If I apply for a driver's license, I have to pass eye and driving tests. I may fail. If I come back with glasses and the requisite skill, should my new application be entertained and allowed? Or am I forever barred because I appealed the first denial? [2] Yes, there is every reason why the first determination should not be conclusive. The applicant may be bringing the required statutory quid pro quo which he did not bring before. [3] Why not ten or twenty? To be realistic, why not two or three? Is this not authorized practice? [4] The applications will stop when the application offers nothing new and the applicant is merely repeating himself, whereupon the Office will be justified in merely denying them *for the same reasons as previously stated.* No applicant will keep this up very long. As for what will become of the public business, one applicant filing a new application every year or two, out of 90,000 a year, will not much impede the business of the Office, especially when the examiner need not make a new search. These seem to me to be the answers to the court's questions in *Barratt* and I do not find much support in them for application of res judicata. It seems to me a proper function of the Patent Office to send applicants away patentless until they have learned what they must do to comply with the law. They do not always know. It is sometimes unclear. The law has a way of changing. Ex parte Budde, supra, Brenner v. Manson, 383 U.S. 519, 86 S.Ct. 1033, 16 L.Ed.2d 69.

There is no law to prevent filing applications and every application filed is required by law to be examined. 35 U.S.C. § 131. What is there to be gained by telling an examiner—who has perhaps not been to law school—to reject a second application which is not materi-

ally different from one previously rejected, whether or not appealed, for "res judicata" instead of for the same reasons applied in the first case, whatever they may have been? See 35 U.S.C. § 132. Apparently the Patent Office has never made up its mind on this point. Compare MPEP 201.07, 201.11, and 706.03(w). If the same reasons do *not* apply because the *situation* is different in some legally critical way, perhaps the application should be allowed. The matter is not one which can be suitably controlled by a single general rule, such as "patentably different" claims, whatever that means.

Blackford v. Wilder was an interference, an *inter partes dispute* over priority. So was another case decided by the same court shortly thereafter, Horine v. Wende, 29 App.D.C. 415, 1907 C.D. 615. That there is an essential difference between ex parte and inter partes cases with respect to res judicata in the Patent Office was long ago recognized. Emerson Stringham in "Patent Office Rejections as Res Judicata," 9 JPOS 399 (1927), said:

> It will be appreciated that these two questions are entirely distinct. An interference proceeding has determined for at least some purposes the rights of two parties who have in effect been involved in litigation with each other. The question of whether to reopen a decision that has been made in a contest between private parties is altogether different from the question of the extent to which an applicant for a patent should be regarded as having lost his right to a patent, because he discontinued his efforts to obtain a patent in *ex parte* proceedings.

In *Horine* the court, in applying the "principle of estoppel by former adjudication" said (emphasis mine) it was "equally applicable to proceedings *of a judicial nature* in the Patent Office." An interference is of such a nature. What is said in opinions in such cases should not be applied unthinkingly to ex parte cases.

*In re Edison,* decided within two years after the *Blackford* and *Horine* cases in the same court, was an ex parte case involving a second application containing claims at least some of which the Patent Office had held differed only in scope from claims of the earlier application which had been appealed twice to the Examiners-in-Chief and the Commissioner, as was then permitted. The second application had of course been through the same two appeals before reaching the court and had been rejected *both* for res judicata and unpatentability over the prior art. The court affirmed the former rejection, citing *Barratt, Blackford,* and *Horine,* saying "any changes merely broadening claims that have been once determined, do not affect the conclusiveness of the former adjudication." Apparently there was no change other than the changes in the claims. The case resembles *Lundberg.* There was no apparent reason for a different decision than on the first application.

*In re Ellis* does not clearly indicate the legal basis of the affirmance. The claims stood rejected as unpatentable "over subject matter held unpatentable in the abandoned application" of the appellant, prosecuted through the Patent Office, an action under R.S. § 4915 having been commenced but dropped. Referring to the board decision on the abandoned case, the court said "as to all subject matter actually contained in any of its claims, * * * appellant is bound thereby," citing In re Becker, 74 F.2d 306, 22 CCPA 843, (1934). The latter case involved res judicata as to some claims, the court, in affirming relying on *Barratt, Edison,* and in addition an *inter partes* trademark cancellation case. At the same time, the case was before the court on a rejection based on the same references used in the former case and the claims in question were substantially the same. The court in *Ellis* also cited In re Cole, 82 F.2d 405, 23 CCPA 1057, which was not a res judicata situation but a rejection on counts of a dissolved interference and prior art. At best, *Ellis* is a somewhat ambiguous precedent.

Hemphill v. Coe was first adjudicated in this court under the name In re Lawson, 70 F.2d 373, 21 CCPA 1091, one holding of the court being that the disclosure in the parent application was inoperative. A second application was filed but was subject to an intervening bar by public use unless the filing date of the parent was available. In considering the new rejection of the second application on the public use bar, the Court of Appeals for the District of Columbia refused to *reconsider* the question of inoperativeness which had been decided by this court, a question which related, of course, to the identical application on which this court had ruled. In effect, its decision was to accept as final the decision of this court on the inadequacy of the *parent* application as a disclosure. This seems to be a proper and reasonable application of res judicata principles having little or no bearing on an issue of patentability resting on the adequacy of the *later* application.

Having reviewed the precedents relied on in *Prutton* and returning to the decision in that case, it does not seem to me that the precedents support the test there applied of "patentably different" claims or the refusal to accept the finding of the board on new evidence that the claimed invention was a statutorily patentable invention. On policy and sound reasoning, I consider the result in *Prutton* to have been erroneous, putting aside, of course, the rejections on references which were not passed upon. I would overrule it and I consider that the majority decision here implicitly does so.

There are other decisions with which Judge Smith is dealing in his concurring opinion and which I therefore am not discussing, being content to express agreement with his views.

"A person shall be entitled to a patent unless * * *." So begins 35 U.S.C. § 102 wherein certain statutory conditions for patentability are recited. Similarly, section 101 says that "Whoever invents or discovers" certain kinds of inventions "may obtain a patent therefor, subject to the conditions and requirements of this title." An applicant for patent is entitled to a patent as a matter of statutory *right* when he meets the "requirements and conditions."

Chapter 11 of Title 35 states how application for patent shall be made and chapter 12 opens with section 131 which says:

The Commissioner *shall* cause an examination to be made of the application and the alleged new invention; and if on such examination it appears that the applicant is *entitled to a patent under the law,* the Commissioner *shall* issue a patent therefor. [Emphasis added.]

Sections 120 and 121 expressly recognize the long-standing practice of filing successive applications.

Since every application has to be examined anyway, it does not seem that the doctrine of res judicata or the principles which underlie it have much practical application to ex parte practice in the Patent Office. The dissent herein suggests there is some significance to the fact that appeals have been taken outside the Patent Office to "a Federal appellate tribunal," seeming to concede that below this level or prior to taking such appeal a different situation may prevail. I am unable to see significance in this distinction. If an applicant is entitled to the examination of a new application, as he certainly is under the statute, it seems to me he is entitled to the concomitant rights of review which go with it. It must be remembered that we have a limited jurisdiction. We never decide the *right to a patent.* All we decide is whether a particular *rejection* was right or wrong. Our decision governs "further proceedings in the case." 35 U.S.C. § 144. In re Johnsen, 359 F.2d 905, 53 CCPA 1401. We cannot tell the Commissioner to issue a patent. Similarly, the courts of the District of Columbia, under 35 U.S.C. § 145, when they disagree with the rejection, can do no more than *"authorize* the Commissioner to issue such patent *on compliance* with the requirements of law." (My em-

phasis.) They cannot compel him to issue it and they do not direct him to. After a judgment authorizing grant, he may refuse it for new reasons, and sometimes does. Decisions on either type of review do not, therefore, finally settle the right to a patent so far as the Patent Office is concerned. So why should they settle it so far as the applicant is concerned?

To summarize my views on the applicability of res judicata principles to ex parte patent prosecution, hoping thereby to reduce some of the inconsistencies, I do not regard the principles as wholly inapplicable. Where an appellate court has decided a *specific* question, for example that the disclosure of an application is inoperative as in Hemphill v. Coe and *In re Lawson,* or that claims are not supported by the disclosure of an application within the meaning of 35 U.S.C. § 112, as was the case with product claims 36, 38, and 39 in *In re Szwarc* discussed in Judge Smith's opinion, the doctrine of collateral estoppel should normally prevent relitigation of that issue. The broader, all-inclusive issue of the patentability of claims, however, depends on numerous factors which may be found in the words of the claims themselves, in the disclosures of the specification, in extraneous evidence, in factors relating to the admissibility of evidence, and possibly elsewhere. A change in any one of these considerations may make the difference between patentability and unpatentability and no simple general rule, such as whether the claims alone are "patentably different," can be controlling.

Res judicata is not the simple principle it may appear to be on first acquaintance and was devised in connection with the litigation of disputes, not with respect to the application for government grant of statutory rights dependent for issuance on compliance with stated conditions. The several policies which underlie it such as putting an end to controversy, conserving the time of the courts, avoiding inconsistent decisions, and encouraging the making of the best

case the first time, must be balanced against the policies underlying the patent laws, particularly bringing about the disclosure of technology in *issued* patents and encouraging the investment of risk capital by *granting* patent rights, whenever inventions patentable under the statutes are presented. It is not in the public interest to prevent the issuance of patents on such inventions. In the administrative process of patent granting, including appellate review of rejections, estoppel by prior judgment should be applied only in the clearest cases of attempted reargument of previously decided issues.

I vote to reverse in the present case because the issue here is different from that decided on the prior application.

SMITH, Judge (concurring).

The opinion written by the Chief Judge reaches a result with which I am in full accord. Since the decision in the present case will materially affect future rejections predicated on res judicata, it seems desirable to amplify the statement of facts on which the present decision is predicated and to add some additional observations as to rationale which should govern its application in administrative proceedings.

The Facts Here do not Warrant the
Application of Res Judicata

The pertinent facts of record may be briefly summarized. Appellant Herr filed application No. 583,923 on May 10, 1956, as a division of a parent application which had been filed August 8, 1955. The rejection of claims in the divisional application was affirmed in our prior decisions, In re Herr, 304 F.2d 905, 907, 50 CCPA 705. The issue before us in this decision arose from the examiner's rejection of all claims as being "unpatentable over" a patent to Herr and Heyl, No. 2,769,019, filed July 9, 1953 and issued on October 30, 1956. The examiner stated, "in view of the absence of a showing of unexpected results the action is made FINAL." Thereafter appellant appealed the rejection and filed an

affidavit of one Stafford allegedly demonstrating unexpected results.

Following receipt of the affidavit, the examiner, by letter of August 1, 1958, advised the case was "in condition for allowance." The pending appeal was dismissed by order of the board but applicant was advised that "the case cannot be passed to issue due to a possible interference." Interference No. 89,720 was declared which was later resolved in favor of appellant.

Following resumption of ex parte prosecution, the examiner, by letter of December 28, 1959, rejected the claims "as lacking invention over Herr." The previous allowance over Herr was said to be "improper and inadvertent." At this time the examiner took the position that the previous affidavit "cannot be accepted." On March 16, 1960, the examiner made the rejection final, and stated that the specification does not "provide a clear unequivocal disclosure that the compounds originally claimed are anabolic agents." Appellant appealed.

Appellant petitioned the board for an early hearing pointing out that the only objection to the appealed claims was based on Herr, the single reference cited in the first office action of January 24, 1957. Appellant pointed out that after once successfully removing any objection based on Herr and also succeeding in an interference, he now finds himself returned to the same position he once occupied over 3 years previously, namely, the rejection made in the first office action. Appellant pointed out that during the interim certain of the appealed claims were relevant to two pending interferences. Appellant stated:

* * * The picture as a whole is one in which applicant's rights will be irreparably damaged unless an early decision is rendered by the Board of Appeals in this application. Moreover, the general public will suffer irreparably if patents are issued to others or delayed to applicant because of the patent confusion which is bound to

result if the patentability of the claims in this case is not determined promptly.

The arguments before the board may be summarized as follows. The examiner argued:

* * * In the absence of a showing of both new and unexpected results the instant claims are not seen to define patentably over the present state of the art. See In re Hass, 1944 C.D. 242. The affidavit submitted under Rule 132 filed May 1, 1958, (Paper No. 6) is not seen to overcome the rejection because it disclosed a utility for the compounds which is not alleged within the specification. * * *

Appellant argued:

The reason for the incorrect position of the Patent Office is not known.
* * *

The statement of usefulness as "novel androgens and anabolic agents" is clearly directed to the compounds claimed in this application. The fact that it also applies to the compounds claimed in the parent application is immaterial. The statement is certainly not exhausted merely because it applies to two different individual products, both disclosed in the same case as novel compounds.

The board affirmed the examiner's rejection and its opinion is adequately discussed in our previous opinion, supra. In our opinion, three judges joining, the issue was stated to be one of obviousness under 103. In resolving this issue, we considered the Patent Office's argument that the *structure* of the claimed compounds was obvious in view of the prior art. Appellant argued that the claimed compounds were not obvious in view of the prior art when their *properties* were considered. We did not consider appellant's argument as we determined that the specification did not teach one of ordinary skill in the art that the claimed compounds possessed oral anabolic and androgenic activity. We concluded, in view of the fact that testosterone and 17-methyltestosterone were known "standards," that the 17 methyl deriva-

tive of Herr would have been an "obvious structural change to a chemist of ordinary skill in that field."

Our opinion appears to proceed on the basis that the chemical compounds in issue may be "prima facie" obvious from a consideration of their structure and the structure of prior art compounds. It has been said that where the claimed compounds are "prima facie" obvious it is "incumbent" upon the applicant to submit evidence of an "unexpected" property or result, see, e. g., In re Heyna, 360 F.2d 222, 53 CCPA 1331. The inquiry under section 103 requires, however, a consideration of the *claimed invention as a whole*. A property of or a result attained by a chemical compound which is not communicated by its chemical structure, may be persuasive of either nonobviousness or obviousness. Thus, properties and results are factual evidence concerning the invention which must be considered in resolving the issues arising under section 103. The *invention* is not simply the chemical structure. To support a section 103 rejection the public must be shown to be in constructive possession of the *invention* by evidence that the *invention* would be obvious to one of ordinary skill in the art. Thus the inventor who discovers a chemical compound, albeit closely related structurally to the prior art compounds, which possesses unexpected properties or attains unexpected results may have made a patentable invention.

Our previous decision held that the specification considered there did not teach one of ordinary skill in the art that the claimed compounds possessed the properties relied on by appellant. These facts which appellant sought to supply by affidavit, and the issue arising thereunder, were therefore not properly before us for consideration in our previous inquiry. In the present appeal a basis has been laid and the facts are properly before us as evidence to be considered in resolving the issue under section 103. In addition, the present record shows the Patent Office agrees that the claimed compounds are *new* and *unobvious*.

The board, however, affirmed the examiner's rejection of the appealed claims "on the grounds of res judicata." The claims presented here are identical to those before us in our previous opinion. The board was apparently of the view that presenting the same claims was per se conclusive of the applicability of res judicata. The board in its opinion reasoned in part as follows:

\* \* \* it is impossible for appellant to argue any unobvious difference in the claims. The identical claims do not acquire a *different meaning or scope* merely because the new application contains additional disclosure of properties and utility.

\* \* \* \* \* \*

\* \* \* Insofar as appellant now relies upon the newly disclosed androgenic and anabolic activity and utility, he must appropriately restrict himself, as by the presentation of claims in *method of use* form, if he wishes to argue that he has now made a new contribution which is not subject to res judicata. We repeat, appellant's problem is created by his determination to obtain claims of the identical *meaning and scope* as the claims of his parent application, albeit the disclosures of the two applications are not identical.

In the sense that the claims are identical and therefore define the same compound, they do not "acquire a different meaning" or "scope." However, I fail to appreciate the significance of the board's reasoning in view of the inquiry required under section 103. Chemical compounds may be "claimed," that is, defined, by a recitation of formula, structure, properties, or the process of making the compound. Had appellant chosen to "claim" his *invention* by reciting properties or utilizing a product-by-process claim, instead of relying on the same claim, it could not be maintained that these claims did not take on a "different meaning" as they would define subject matter which is admittedly unobvious in view of the prior art. Appellant would appear to avoid the reasoning

of the board by merely utilizing a different form of claim. It does not seem to me that the form of claim used is either relevant or controlling. The subject matter sought to be patented, the *invention*, must be considered, not the form of claim utilized.

The board was also of the opinion that appellant should restrict himself to "claims in method of use form." From this statement I assume the board intended that appellant claim a process of using the claimed products, section 100 (b). This type of reasoning was presented in In re Papesch, 315 F.2d 381, 50 CCPA 1084. Therein the examiner reasoned, "The obvious compound is not made less obvious by its properties in an art use. * * * It appears that if * * * [a patentable] invention is present, it resides in the use of the claimed compounds as anti-inflammatory agents and should be claimed as such." 315 F. 2d at 384, 50 CCPA at 1088. We disagree with this reasoning. We quoted the following, 315 F.2d at 389, 50 CCPA at 1095, from In re Larsen, 292 F.2d 531, 49 CCPA 711:

> * * * the allowance of the claims to the compounds was based on the fact that they possessed unique, and presumably unexpected, properties. *Since there was nothing to indicate that the compounds, when made, would have these properties, it was not obvious to make the compounds.* In such a case the allowance of claims to the compounds must depend on the proposition that *it was unobvious to conceive the idea of producing them,* within the meaning of Title 35 U.S.C. § 103.

> [Emphasis added.]

As to "structural obviousness" the opinion in *Papesch* quotes the following, 315 F.2d at 390, 50 CCPA at 1096, from In re Lambooy, 300 F.2d 950, 49 CCPA 985:

> A comparison of the structural formulas of these two compounds shows clearly that there is substantial *structural* similarity. But more appears from the facts of this case than struc-

tural similarity, facts which raise genuine question as to the real significance of such bare *structural* similarity, whatever label may be attached to it.

> * * * There is no evidence *in the record* which would lead one skilled in this art to expect that the differences in molecular structure between riboflavin and appellant's compound would cause this difference in properties.

In In re Petering, 301 F.2d 676, 683, 49 CCPA 993, 1002, we stated:

> * * * Although it is also true that some of the specific compounds of Karrer [the reference] * * * are *structurally rather similar* to the compounds defined in claims 5, 11 and 12, * * * there is a *significant difference in properties* between appellants' compounds and Karrer's compounds. [Emphasis added.]

> *       *       *       *       *       *

We do not agree with the board that the unexpected properties of the compounds defined in claims 5, 11 and 12 should not be considered in determining the patentability of these claims. The compounds are not *described* in Karrer within the meaning of 35 U.S.C. § 102(b). In determining whether the claimed compounds are *obvious* within the meaning of 35 U.S.C. § 103, we think their properties may and should be considered, and having considered the properties, we are convinced the compounds * * * are patentable over Karrer.

We concluded in *Papesch*, 315 F.2d at 390, 50 CCPA at 1097:

> From the standpoint of patent law, a compound and all of its properties are inseparable; they are one and the same thing. The graphic formulae, and the chemical nomenclature, the systems of classification and study such as the concepts of homology, isomerism, etc., are mere symbols by which compounds can be identified, classified, and compared. But a formula is not a compound and while it

may serve in a claim to *identify* what is being patented, as the metes and bounds of a deed identify a plot of land, the *thing* that is patented is not the formula but the compound identified by it. And the patentability of the thing does not depend on the similarity of its formula to that of another compound but of the similarity of the former compound to the latter. There is no basis in law for ignoring any property in making such a comparison. An assumed similarity based on a comparison of formulae must give way to evidence that the assumption is erroneous.

It seems to me that the board here, in effect, but reargues the reasoning advanced and rejected in *Papesch*, namely, that unexpected properties of a chemical compound should be claimed in the form of a process, see 315 F.2d 381, 50 CCPA at 1088. Whether appellant seeks a patent to new and unobvious compounds or to a new and unobvious process of using these compounds is irrelevant to the determination of whether the present rejection on res judicata is proper. Properties inhere in the compound as in *Papesch* and must be considered.

The problem in applying res judicata to ex parte Patent Office proceedings has been considered by the Board of Appeals in several cases.

Thus, in Ex parte Gustavson, 14 USPQ 332 (1932) the board overruled a rejection based on res judicata stating:

We have considered our former decision and are of the opinion that these claims were not held unpatentable on their merits but on the ground that they were not supported by the original disclosure and further that certain affidavits which were relied on by the appellant did not establish comparative facts which would show wherein the construction by the rejected claims possessed certain advantages over the art

cited as alleged in the arguments for their allowance. Appellant has now filed a new application Serial No. 502,-350, December 15, 1930, in which the construction claimed is adequately disclosed and has supported his contentions relative thereto by new affidavits, thus *prima facie* overcoming the grounds upon which the former decision was based. Under these conditions we are of the opinion that the rejection on the ground of *res adjudicata* should not be ·insisted on.

In Ex parte Jameson, 23 USPQ 179 (1934), the board considered a problem very analogous to that here before us. In resolving it, the board stated:

After our decision in application No. 161,463, appellants filed the present application on appeal in which the specification was enlarged to describe the use of pectin and sugar and the value of such ingredients as incorporated with the fruit juice solids in the production of a powder was emphasized. We note that application No. 161,463 has become abandoned. We feel therefore that the question of *res adjudicata* as here raised is unwarranted inasmuch as the present application overcomes the lack of disclosure in the prior application and that our decision was rendered principally because of the lack of disclosure in the former application.

In Ex parte Schott, 136 USPQ 383 (1962), claims to a new abacus useful as a calculating device were previously rejected under section 103. This rejection was affirmed on appeal. Appellant filed a second application with claims to a new abacus useful as a teaching device for small children learning the decimal system. These claims were also rejected under section 103. After comparing the claims the board's conclusion was "that the two claims define precisely the same structure,* although using somewhat dif-

---

* The board opinion acknowledges, 136 USPQ at 385:

In the parent application the abacus was disclosed as oriented with the rods arranged one under the other so that the numbers represented on the rods by the counters would be in an array at right angles to the normal arrangement when written. This is in contrast to the instant case which discloses precise-

ferent verbiage." 136 USPQ at 385. The examiner was of the view that the obviousness of the claimed abacus was res judicata in view of the previous board decision. The board stated:

> * * * the evidence in the instant appeal * * * presents the *entirely new issue, namely of subject matter* which, because of its novelty, permits effectuation of a new utility in teaching, this being a concept foreign to the reference devices.
>
> Thus, although the claim covers precisely the same physical structure, a different issue of patentability is presented for consideration.
>
> We were unable to find any decision by this Board or any court reviewing a decision of this Board on analogous facts, namely where the claim is identical as to structure but new evidence and new issues of patentability are presented for consideration. [Emphasis added.]

Res judicata was held inapplicable. The board clearly felt it was its duty and function to consider the obviousness of the *invention,* the subject matter sought to be patented since this had *not* been considered previously. Cf. Weeks v. Warp, 95 U.S.App.D.C. 235, 221 F.2d 108, (1955) ("same subject matter" and "same disclosure"). Identity of claim language was not controlling. As one writer has indicated: [1]

> The comparison of claims, however, does not totally resolve the issues of the applicability of res judicata. Rather, the same question of patentability or issue must appear, *and the claims must be considered in this context.* If, in this area, there is the confusion that has been evidenced in case law terminology, it is submitted that clarity and uniformity would be promoted if the rejection specified the precise statu-

tory grounds of rejection. Even if the *same* statutory ground of rejection is relied upon in the second application, for example, section 112 of the act, the *issue* as to different or even the same claims may not have been previously litigated. [Citations omitted.]

Additionally, the issue of obviousness of an invention under section 103 may require consideration of such matters as

> commercial success, long felt but unsolved needs, failure of others, etc. * * * to give light to the circumstances surrounding the origin of the subject matter sought to be patented. As indicia of obviousness or nonobviousness, these inquiries may have relevancy. Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S.Ct. 684, 694, 15 L.Ed.2d 545, (1966).

In Ex parte Osborn, 25 USPQ 260, a claim to an airplane construction was rejected, and affirmed by the board, as "devoid of invention [obvious]." However, the board refused to be bound by its prior decision, stating:

> * * * We believe that on the record of the other application, that decision was justified, but since that time a historical event has occurred which we think furnishes evidence materially affecting the situation. * * *

The "historical event" was that the airplane so constructed won a $100,000.00 first prize in the Guggenheim competition. The board observed:

> In the face of such overwhelming proof of lack of appreciation of the usefulness of floating ailerons with the slotted wing and trailing edge flaps, it seems rather presumptuous for this Office to insist any longer that the combination was obvious. Perhaps there never has been a better opportunity to demonstrate that those most highly skilled in an art had not thought of

---

ly the same means as oriented with the rods at 90° to that of the parent case so that the numbers represented by the counters on the rods would be in horizontal array consonant with the mode of writing numbers under our system of notation. This mode of use correlates the written system of numbers with their representation on the abacus.

1. Kananen, Comments and Observations on Res Judicata and Patent Law, 18 W.Res. L.Rev. 103, 115 (1966).

adding two improvements together to get a result that seemed to involve nothing more than the sum of the advantages. * * *

The factual requirements which the Supreme Court has recognized as being an essential part of the determinations under section 103 seem to me to require that proceedings at the administrative level must not be unduly foreclosed so as to deny applicants the opportunity to supply the factual materials required to determine these issues.

While the *Schott* decision was not followed by a majority of the board sitting en banc in Ex parte Budde, 150 USPQ 469 (1966), I find it significant that the majority decision does not discuss or overrule the *Gustavson*, the *Jameson* or the *Osborn* cases, supra, although all were referred to in the first of the concurring opinions. Neither does the majority opinion in *Budde* refer to the factual aspects of section 103 issues discussed by the Supreme Court in *Graham*, a little less than a month earlier than the *Budde* decision.

The present case, however, requires that we consider the res judicata issue which is here presented in the light of the Supreme Court's latest pronouncement as to the nature of the determinations which must be made under section 103. When this is done, I think the *Jameson*, *Osborn* and *Schott* decisions provide a more rational basis for resolution of the res judicata issue in section 103 rejections than does the *Budde* decision. In passing, I express my agreement with the views of the concurring board members in *Budde*. I do not think the fact situation in *Budde* required overruling *Schott*.

It is clear the majority in *Budde* felt compelled to the result there reached by the decisions of this court in In re Prutton, 204 F.2d 291, 40 CCPA 975; and in In re Lundberg, 280 F.2d 865, 47 CCPA 1140. However, as Judge Rich has pointed out in his concurring opinion, *Prutton* is of questionable value as a

precedent and I agree with him that it should be overruled. It seems to me also that the practical effect of the majority opinion here is to do so. *Lundberg*, as a precedent, is viable only within its particular fact framework as Judge Rich has demonstrated in his concurring opinion. Thus, neither *Prutton* nor *Lundberg* requires an affirmance of the res judicata rejection here.

Three other decisions of this court, while not controlling on the present fact situation, contain general observations concerning the problem of applying res judicata to Patent Office proceedings and should be briefly considered. These cases are: In re Fried, 312 F.2d 930, 50 CCPA 954 (1963); In re Szwarc, 319 F.2d 277, 50 CCPA 1571, (1963) and In re Hitchings, 342 F.2d 80, 52 CCPA 1141 (1965).[2]

In In re Fried, 312 F.2d 930, 50 CCPA 954, we reviewed the requirements of res judicata. The first application there ended in an unappealed examiner's rejection, which, under present office practice is not considered as giving rise to res judicata. Be that as it may, the first application involved support for those claims, section 112, and the second application also involved support for different claims which were narrower in scope, section 112 via section 120, the purpose being to gain the benefits of an earlier filing date. While we affirmed the decision of the board, we did so on the basis of the merits of the case and not res judicata. We said different claims presented a different issue. *Nothing was said about any converse.* The plain fact is that every application usually presents a range as to subject matter that may be claimed and to that end many types of claims exist. Claims may be either too broad or too narrow to satisfy section 112 for a given specification. Each claim must be examined in light of the specification. The "scope" or "form" of claim is no conclusive guideline or solution to determining "issues" and whether res judicata is applicable, as this appeal dem-

2. See 33 Geo.Wash.L.Rev. 1149 (1965).

onstrates. Insofar as the alternative provided by section 120 and office practice is concerned, discussed in *Fried,* there was no intention there to decide cases in the future involving different fact situations. And the "alternative" here, discussed supra, appears to have been something less than a free choice.

In In re Szwarc, 319 F.2d 277, 50 CCPA 1571, we again were concerned with section 120. Therein we held, as to certain product claims, that collateral estoppel existed as to whether the specification satisfied section 112 in view of the fact that the form of claim employed included a specific product upon which a federal court had previously held the specification was deficient under section 112 as to that specific product. The "scope" or "form" of claim was immaterial. The issue whether the specification taught "how to use" that compound had been previously decided.

Whether the claimed *invention* here is "obvious," in my view, has not been decided. In view of all of the facts of record, there is a lack of *identity of issues,* not simply *different evidentiary facts.*

Sections 120 and 112 were also involved in In re Hitchings, 342 F.2d 80, 52 CCPA 1141. Like *Fried,* an unappealed examiner's rejection was relied on as being res judicata. We held res judicata inapplicable, 342 F.2d at 85, 52 CCPA at 1147, stating:

* * * For if unappealed final rejections are uniformly held to be res judicata, the applicant has no choice other than appeal or abandonment of his case. But if time and energy are to be expended, even unnecessarily, it is much more desirable that such expenditure should occur at administrative levels. On balance, we believe that an applicant should be encouraged in rather than penalized for, promptly filing a better application after final rejection instead of appealing, especially where so much of the procedural machinery of the Patent Office is designed to permit just such a remedy.

The trials of the everyday practice of patent prosecution are here poignantly demonstrated. Hitchings was allegedly wrong for not appealing (continuation application filed March 1, 1960) while here Herr is allegedly wrong for appealing (final rejection March 16, 1960). We would all do well to heed the Commissioner's admonition, infra, to help inventors.

Before res judicata can be applied in any situation, the initial consideration is to determine precisely what issue was previously adjudicated in making the further determination as to whether res judicata is applicable. In the present case, we previously decided that the 17-methyl derivative of Herr "would be an obvious structural change to a chemist of ordinary skill in that field," cf. *Papesch,* supra, and that since the specification did not teach anabolic and androgenic activity, we could not consider the evidence of the unexpected properties of the claimed compounds.

While we are here dealing with the same compound as before and with an issue which also arises under section 103, it is apparent that patentability of the compound has taken on a new light for the "structurally obvious" compound, when considered as a whole, has been shown to possess new and unobvious properties. Thus, under *Papesch,* we are here dealing with a new issue notwithstanding the fact that the same patent claims are again before us. It is but coincidental that the same combination of words assembled in the form of a patent claim can define to one of ordinary skill in the art subject matter that is "structurally obvious" but which may well be patentable under the tests of obviousness enunciated in Graham v. John Deere Co., supra. "Structural obviousness" is simply not the obviousness required by section 103 to render an invention unpatentable.

While I appreciate the dissenter's position here in asking why we, a federal appellate court, should again consider matters arising under section 103, this is not the entire problem. The dissent

characterizes the problem here as being merely one of evidence and seems to consider that appellant created the problem by choosing to appeal the earlier board decision. The dissent also portrays, as contrary to some undefined public policy, "endless litigation," creating commercial markets, and attorneys putting their worst foot forward for the best interest of their clients.

The record does not establish or even intimate any wrong doing on appellant's part. He is but pursuing the procedures afforded him by the patent statute. In fact, the record establishes that appellant had something less than a "free choice" concerning his first appeal and filing a second application in the Patent Office, a situation quite common in the practice of patent law. The facts set forth, supra, speak for themselves. Appellant had overcome the only reference cited by the examiner, and had been successful in an interference. Only after this was the allowance of his claims withdrawn and an old rejection reinstated as a final rejection. At this time appellant was involved in two other interferences. As appellant's brief states:

> * * * The priority of the disclosure of the subject matter sought to be patented as oral androgenic and anabolic agents has been adjudged not to reach to his parent case, and applicant must be content to whatever priority benefit otherwise accrues to him from that disclosure.

Appellant probably could have filed a second application and sought a determination whether the requirements of sections 120 and 112 were satisfied in order to secure priority benefits. However, the better course of action in appellant's view was to seek an early determination, in view of the pending interferences, whether the properties relied on to establish unobviousness were supported by the specification there involved. We held support was lacking and appellant sought a new filing date. It is interesting to note that the examiner in this case relied on a patent having a filing date *after* the filing date of the parent application. Thus, the issue of obviousness was considered under totally different circumstances.

It is precisely because of the complex nature of patent prosecution, where one act may affect several rights, that the statute has provided for the filing of continuing applications. Appellant but followed a prescribed course of action, sanctioned by law, in filing a second application with a second fee which entitled him to a new determination of his right to a patent.

Should the fact that the board and this court had become involved in the first application act as a bar which negates this statutory right? I think not, especially where the only basis advanced for such a bar is res judicata. Such an indiscriminate application of res judicata could wreak havoc on the present system of examining applications and could lead to *prolonged* prosecution in the Patent Office. While piecemeal litigation is certainly to be avoided, much is to be said for the taking of appeals which may serve to simplify future litigation.

There is no question but that the single interest of administrative expediency will be served by a broad application of the doctrine of res judicata and would have the salutory effect of removing a few appeals from our docket. The more important issue, however, is whether such an application of the doctrine serves any public purpose in so doing. I am convinced that the savings in time in the Patent Office would be very small indeed, and that the injustices possible under it are too large a price to pay. While we sit as a federal appellate court wherein a broad reach may be the general rule as to the res judicata doctrine, that is not to say that we are *obligated* to act accordingly particularly in view of the nature of the issues which come before us. As a doctrine, res judicata is to be applied in the public interest. It is paramount to the public interest that *issues* once litigated be closed to relitigation. It is, however, also in the public interest that applicants for pat-

ents be protected in their rights to secure patents according to the Patent Act of 1952. The duty of the Commissioner of Patents under this Act was stated by him, quoted in In re Gustafson, 331 F.2d 905, 911, 51 CCPA 1358, 1366, as follows: .

> The main operations of the Patent Office are, of course, the examination of patent applications and *the granting of patents on patentable inventions.* Promptness of examination is an important element of our work. Further, in addition to our responsibility of protecting the public by refusing to grant patents on *unpatentable inventions,* we should also make it our job to *assist the inventor or his attorney in a positive manner to arrive at proper claims covering his invention where the invention is patentable, and I wish to request that we give greater emphasis in the future towards fulfilling this key function.* [Our emphasis.]

I therefore concur in the majority opinion and express my substantial agreement with the pertinent observations contained in Judge Rich's concurring opinion.

ALMOND, Judge (dissenting, with whom KIRKPATRICK, J., joins).

In the commendable pursuit of an abstract ideal known as perfect justice, the majority seemingly attempts in this case to abolish the legal doctrine of *res judicata* in ex parte patent cases. If the majority decision is allowed to stand, then the legal doctrine of *res judicata* will be essentially abolished in ex parte patent cases. Obviously, if *res judicata* is inapplicable as a ground of rejection when patentability of the *same* claims to the *same* applicant has been previously adjudicated adversely to the applicant in a final decision on the merits by a Federal appellate court, as the majority here decides, then similar decisions of lower tribunals, e. g. the Patent Office Board of Appeals, could not possibly give rise to a *res judicata* rejection. Likewise, a final decision on the

merits adverse to patentability of slightly *different,* but patentably indistinct, claims could not possibly lay a foundation for a *res judicata* rejection.

I am thoroughly convinced that the rules of law and underlying rationales expressed by the Supreme Court, this court, and the District of Columbia courts in numerous opinions involving the application of the *res judicata* doctrine to patent cases should govern here. The sound public policy considerations which form the basis for the doctrine are especially convincing. On the negative side, I am not at all persuaded by the arguments advanced by the majority and appellant, which arguments I shall subsequently analyze, after presentation of the case law which *formerly* prevailed in this court prior to the present majority decision.

One of the leading cases on application of the *res judicata* doctrine to ex parte patent cases is that of the Court of Appeals for the District of Columbia, our jurisdictional predecessor in such cases, in In re Barratt's Appeal, 14 App. D.C. 255 (1899). There, as here, the same claims had previously been held unpatentable on the merits by the Federal appellate court which at the time reviewed Patent Office decisions on the record established in the Office. Subsequent to the final (court) decision, as here, the same applicant presented the same claims in a second application, which contained additional specification disclosures not present in the parent application. Likewise, the meager record in the prior case was enlarged by additional evidence, especially with regard to the state of the art, in Barratt's second case. Speaking of the new evidence in the second record, and the expanded application disclosures, the court stated, 14 App.D.C. at 259:

> The new application does not make a different case. The case is the same precise case. The subject matter of invention is the same. The claim is the same. Only the specifications and drawings are more full; and the state of the art at the time of the alleged

invention is more fully and satisfactorily shown. But all this * * * at the utmost amounts to no more than a clearer and better declaration or additional proof of the alleged invention. It does not make any new case; and it does not justify the filing of any new application.

The above-quoted language is fully as applicable to the facts of the present case as it was to the quite similar facts of the second *Barratt* case in 1899. The Court of Appeals also ably expressed the sound public policy considerations which provide the foundation for *res judicata* rejections in ex parte patent cases, 14 App.D.C. at 258:

When, on the other hand, an application for a patent is after due examination rejected, and finally determined against the applicant after exhaustion of the manifold right of appeal allowed to him by the great liberality of the patent laws, why should a second application be allowed or entertained? Is there any reason why the determination of the matter should not be regarded as conclusive? If a second application could be regarded as proper, why not ten or twenty successive applications? Where are the applications to stop, and what would become of the public business, if it were in the power of one person to obstruct the operations of the Patent Office by repeated and persistent applications? These questions answer themselves. * * *

To which I can only add my agreement that these questions certainly do answer themselves. Yet the majority is "inclined to discount, the somewhat exaggerated fears of the Patent Office of the potential procedural bedlam resulting from our holding here."

The *Barratt* case was cited and quoted from with evident approval by the Supreme Court in Overland Motor Co. v. Packard Motor Co., 274 U.S. 417, 420, 47 S.Ct. 672, 673, 71 L.Ed. 1131 wherein the Court stated:

It is quite true that, after such [unappealed final] rejection, the Commissioner of Patents might have refused to consider his divisional application, as he made it without suggestion or consent by the Patent Office. In a qualified and limited sense a claim rejected as this was constitutes *res judicata* in favor of the Government and against the applicant. * * *

The Court then quoted, 274 U.S. at 421, 47 S.Ct. at 673, with approval the following language from the *Barratt* case, 14 App.D.C. at 257, with regard to the reasons why the *res judicata* doctrine should apply to ex parte patent cases:

While the rules that govern the finality and conclusiveness of adjudications at the common law do not apply, in the strict sense, to administrative or quasi-judicial action in the Executive Departments of government, yet in administrative action, as well as in judicial proceeding, it is both expedient and necessary that there should be an end of controversy. * * * Especially is this principle applicable to the proceedings of the Patent Office, which are so nearly akin to judicial proceedings as to be most appropriately designated as quasi-judicial.

The Supreme Court then quoted with approval, 274 U.S. at 421, 47 S.Ct. at 673, an important qualification on the doctrine of *res judicata* in Patent Office proceedings, i. e. the waiver principle, as stated by the Court of Appeals in *Barratt*, 14 App.D.C. at 261:

In what we have said we do not desire it to be understood that the Patent Office may not, if it thinks proper so to do, [favorably] entertain and adjudicate a second application for a patent after the first application has been rejected. What we decide is, that it is not incumbent upon the office as a duty to [favorably] entertain such applications, and that, if it refuses to [favorably] entertain them, it has a perfect legal right so to do. An applicant is not legally aggrieved by such refusal [to waive the *res judicata* doctrine].

In the *Overland* case, the Supreme Court held that the Patent Office had *waived* its *res judicata* objection as to presentation of the same, previously finally adjudicated claim in the second case by *granting* the patent including said claim. In the present case, the Patent Office has certainly *not* waived its available *res judicata* objection, and I do not read the majority opinion as holding that the Office has in fact so waived it. As is well known, a waiver is a voluntary or intentional relinquishment of a known right. There is absolutely nothing in the record or briefs which might establish such a waiver, either express or implied. The appellant does not even argue the possibility of such a waiver. The examiner asserted the *res judicata* doctrine as a ground of rejection in each of the four Office actions and his Answer before the board in this case, and the board and the Solicitor, on behalf of the Commissioner, state that *res judicata* is the sole remaining ground of rejection here. Thus, there clearly has been no waiver by the Patent Office of the doctrine, and this court manifestly has no more authority to waive it on behalf of the Patent Office than we have authority to waive any other rights to which the parties before this court are entitled.

The *Barratt* and *Overland* cases were both cited and followed by this court in In re Prutton, 204 F.2d 291, 40 CCPA 975, (1953), shortly after the January 1, 1953, effective date of the Patent Act of 1952, Title 35 U.S.C. In the *Prutton* case, the claims in a parent application had previously been held obvious and unpatentable on the merits over a single prior art reference, Downing patent No. 2,285,853, by the Court of Appeals for the District of Columbia. A continuation-in-part application with additional disclosure and different, broader claims was subsequently filed by the same applicant. Although the claims of the new application were held by the board to be unobvious in view of, and patentable over, the same reference on the *new* record established in the Patent Office in the second case, as is the case here, the board nevertheless affirmed the examiner's *res judicata* rejection, while reversing the prior art rejection on the merits. With regard to this apparent anomaly, this court stated, 204 F.2d at 295, 40 CCPA at 980:

> We think this simply means that the present board thought the claims in the earlier [parent] application were erroneously held unpatentable over Downing * * *. The board clearly considered this to be immaterial insofar as the question of *res judicata* was concerned, and properly so. *Res judicata* applies whether the final decision in the earlier application was right or wrong, or was induced by want of the particular evidence offered to the board in this case, Blackford v. Wilder, 28 App.D.C. 535, unless the appealed claims are patentably different from those refused in that application. In re Ellis, supra, 86 F.2d 412, [24 CCPA 759].

> Moreover the board's reversal of the prior art rejection on Downing * * and its affirmance of the rejection of *res judicata* is not in fact anomalous, although seemingly so at first impression. It was necessary for the board to have ruled on the merits of the prior art rejection based on Downing * * *, in view of the possibility that the rejection on *res judicata* might be reversed on appeal. Otherwise, the former rejection, not having been expressly overruled by the board, would be regarded by this court as having been affirmed. * * *

The application of these principles to the facts of the case at bar is as follows. *Res judicata* applies here even though the final decision on the merits in the parent Herr application *may possibly* have been induced by failure to consider the first Stafford affidavit offered to the examiner in this case. In fact, the decision was probably not so induced. Appellant took the position that, if the Stafford affidavit of May 1, 1958 had been considered in his parent case, the claimed subject matter would have been held unobvious and patentable on the

original record. Yet, when the present continuation-in-part application was filed, thereby laying a foundation for the affidavit showing, the examiner still contended that the claims were obvious and unpatentable over Herr et al. patent No. 2,769,019, the reference applied against the same claims in the parent case which was previously before this court. The examiner adhered to this position on reconsideration of the matter. *Only after* two additional affidavits were filed on June 25, 1964, did the examiner, on July 28, 1964, withdraw the obviousness rejection factually based on the Herr et al. patent and rely solely on the *res judicata* doctrine as a ground of rejection. Prior to that time, the examiner consistently applied both grounds of rejection, *res judicata* and obviousness under 35 U.S.C. § 103 in view of the Herr et al. reference, against appellant's claims.

Since the claims of the present continuation-in-part application are *identical* to the previously adversely adjudicated claims, there can be no serious question that the appealed claims are not different at all, let alone "patentably different," from the claims held by this court to be obvious and unpatentable under 35 U.S.C. § 103 in the first *Herr* case. Also, the examiner's reconsideration of the claims on the merits in light of the new record established in this second case, and his holding that the claims define unobvious subject matter on the present enlarged record, clearly do not amount to waiver of the *res judicata* doctrine, which he continued to repeatedly assert, just as the board's similar reconsideration and holding of unobviousness in view of the new record established in the second *Prutton* case, supra, did not amount to a waiver of *res judicata*. In reconsidering the issue of obviousness of the previously adjudicated claims in light of the new record, the examiner was merely following the guidelines set forth by this court in *Prutton*, "in view of the possibility that

the rejection on *res judicata* might be reversed on appeal," as in fact has occurred here. It was "necessary" for the examiner to act as he did in order to avoid undesirable piecemeal examination. See also Judge Rich's concurring opinion in the instant case.

The only significant differences between the *Prutton* case, which likewise involved a continuation-in-part application, and the present one are that (1) the prior decision in the first Prutton case was by the Court of Appeals for the District of Columbia, while the prior decision in the first *Herr* case was by this court; and (2) the claims in the second *Prutton* case were different, but not patentably so, from the previously adversely adjudicated claims, while here the claims in the two cases are identical. With regard to the latter difference, this should present an *a fortiori* case in view of the *Prutton* rationale requiring patentably distinct claims.

With regard to the former matter, this is also a difference without a distinction. While I am fully aware that this court was once regarded as equivalent to an administrative agency, and that there is a school of thought to the effect that *res judicata* should not apply to administrative agency decisions, it is now well settled that this tribunal is an Article III court, not an administrative agency or an Article I court. Brenner v. Manson, 383 U.S. 519, 86 S.Ct. 1033, 16 L.Ed.2d 69, (1966). Thus a final decision on the merits by this court adverse to the patentability of an appellant's claims should be held to give rise to a proper *res judicata* rejection, when the same applicant presents either the same, or patentably indistinct, claims in a subsequently filed application,[1] just as a similar final decision by the Court of Appeals for the District of Columbia Circuit makes proper such a *res judicata* rejection by the Patent Office. *In re Prutton*, supra. Even if this court were still considered to be an administrative agency, which clearly it is not, the following

1. And it has been so held. See Weeks v. Warp, infra.

recent statement by the Supreme Court in United States v. Utah Construction & Mining Co., 384 U.S. 394, 421–422, 86 S.Ct. 1545, 1559, 16 L.Ed.2d 642 (1966), is pertinent:

> Occasionally courts have used language to the effect that *res judicata* principles do not apply to administrative proceedings, but such language is certainly too broad. When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose. [Cases cited.] * * *

The *Prutton* case was cited and followed by this court in In re Lundberg, 280 F.2d 865, 867–8, 47 CCPA 1140, 1143–1144 (1960), wherein the following pertinent guidelines were set forth:

> The starting point is a comparison of what is claimed here *with the relevant claims in the prior case.* If the claimed subject matter is the same, the prior adjudication is binding * * *.
>
> * * * * * *
>
> Patentability over prior art is not reconsidered as a virgin problem. On the contrary, the prior decision stands, right or wrong, for all disputed issues there decided, In re Prutton, 204 F.2d 291, 295, 40 CCPA 975, 980, and we determine patentability of the new claim *over the adjudicated claim,* considering prior art, if necessary, only if substantial differences between the claims exist. The public policy which is implemented by this rule is that there shall be an end to litigation, that when one has exhausted the remedies provided by law he shall not be permitted to go through the process all over again.
>
> * * * * * *
>
> In cases appealed to this court, or taken to the District of Columbia courts under 35 U.S.C. § 145, involving the *ex parte* prosecution of patent applications what must be borne in

mind with respect to *res judicata* is the distinction between claims to different inventions on the one hand and different claims to the same invention on the other. Where different inventions are claimed, *res judicata* does not preclude a new consideration; but where an applicant is merely presenting new claims to the same invention, the patentability of which he has already argued before the court, reconsideration of the issue of patentability is proscribed by the doctrine of *res judicata.*

As here, the prior decision on the merits adverse to patentability in the first *Lundberg* case was by this court. Although the second *Lundberg* case involved a continuation application with the same specification and different, but patentably indistinct, claims, while the present case involves a continuation-in-part application with a slightly different specification and the same claims that were previously adversely adjudicated on the merits under 35 U.S.C. § 103 by this court in the first *Herr* case, the above-quoted guidelines set forth by this court in *Lundberg* are equally applicable to the present case, which, like *Prutton,* involves a continuation-in-part application.

Since "the claimed subject matter is the same" here as in the first *Herr* case, "the prior adjudication is binding," and "the prior decision stands, right or wrong, for all disputed issues there decided," including the ultimate issues of whether these claims are patentable to appellant and whether these presently appealed, and previously adversely adjudicated, claims are obvious and unpatentable under 35 U.S.C. § 103 in view of the disclosures of Herr et al. patent No. 2,-769,019. The new claims are manifestly not patentable "over the adjudicated claim[s]," since the two sets of claims are identical, and no differences whatsoever, let alone "substantial differences between the claims exist." Appellant does not even present new and different claims to the same invention, but rather presents for a *second* full day in court

the same old claims to the same invention, certain chemical compounds claimed as compositions of matter, the claims being unrestricted by any use, or method of preparation, limitations.

Although appellant is reduced to the necessity of contending in his brief that "the patentability of the claims was not considered by the court [in the first *Herr* case], and appellant could not argue it as an issue," examination of the court's opinion in that case reveals that "[a]ppellant contends here, as below, that (1) the claimed compounds would not be obvious to a person of ordinary skill in the art * * *." 304 F.2d at 909, 50 CCPA at 708. Since appellant "has already [unsuccessfully] argued before the court" the issue of patentability of the same claims to the same invention, "reconsideration of the issue of patentability is proscribed by the doctrine of *res judicata*." In re *Lundberg*, supra.

With regard to the matter of whether the invention is the same or different here from that in the first *Herr* case, appellant makes these manifestly fallacious arguments in his brief:

> And if the invention is different by virtue of a more complete and full disclosure of it then *res judicata* is no bar.
>
> \* \* \* \* \* \*
>
> Even though the wording of the claims is the same as before, *the invention they represent,* i. e. certain particular unobvious substances, is not the same as before. * * *

Obviously, if "the wording of the claims is the same as before," which is the case here, then "the invention they represent," i. e. certain chemical compounds unrestricted as to use or method of preparation, must necessarily be "the same as before." These compounds remain the same compositions of matter per se regardless of whether they are disclosed in the specification to possess properties giving rise to 1, 10, 100, or 1,000 uses, and regardless of whether 1, 10, 100, or 1,000 methods of preparing the compounds are disclosed in the specification. The "more complete and full

disclosure," contrary to appellant's argument, certainly does not make the claimed compounds themselves any different, when considered as compositions of matter per se, as they are claimed.

The opinion of this court in In re Fried, 312 F.2d 930, 931, 50 CCPA 954, 957 (1963), stresses that "[s]ince different claims are here presented the issues decided in the parent application and those to be here decided are not the same." In contrast, the issue presented in this case is identical to the issue presented, and decided adversely to appellant, in the first *Herr* case, namely, whether the subject matter of the appealed claims is obvious under 35 U.S.C. § 103 in view of the disclosures of Herr et al. patent No. 2,769,019. The claims, prior art reference, and statutory ground of rejection (section 103) are the same in both cases. In *Fried*, this court declined to follow the *Overland* case, supra, on the grounds that (1) different (narrower) claims were before this court in *Fried*, whereas the same claims were involved in *Overland*, and (2) the *Overland* case was decided 26 years prior to enactment of the Patent Act of 1952.

In the present case, where the claims are identical to the previously adversely adjudicated claims, as in *Overland*, the majority simply omits all mention of this Supreme Court case, which cannot be distinguished so easily here as in *Fried*. I would respectfully suggest to the majority that, if *Overland* is to be overruled, expressly or impliedly, then either the Supreme Court itself or Congress should do it. Basic Supreme Court decisions such as *Overland* and Brenner v. Manson, supra, should not be so narrowly construed (as to be virtually limited to their own particular facts) by lower Federal courts, including this one, in deciding patent cases. See Hazeltine Research, Inc. v. Brenner, 382 U.S. 252, 86 S.Ct. 335, 15 L.Ed.2d 304 (1965).

With regard to the effect of the Patent Act of 1952, this court stated in Fried, 312 F.2d at 933, 50 CCPA at 959:

> It seems to us the clear intent of 35 USC § 120 and of the present pro-

cedures in the Patent Office relative thereto have established a practice under which an applicant may (1) appeal an examiner's adverse ruling or (2) acquiesce in the ruling and file a continuation application with new claims therein.

The *alternative* in *Fried* has now become the *conjunctive* in the present case. After appealing the examiner's adverse ruling to the Board of Appeals and then to this court in the first *Herr* case, appellant refused to acquiesce in this court's ruling on the merits adverse to patentability of the previously adjudicated, and presently appealed, claims under 35 U.S.C. § 103, and filed a continuation-in-part application with the same old claims therein. The majority says that we must approve this unorthodox procedure, or else be guilty of "unjustly enrich[ing] the public" by applying the well-established legal doctrine of *res judicata* in favor of the Patent Office, which represents the public interest. See, generally, "Developments in the Law—*Res Judicata*," 65 Harv.L.Rev. 818, 882–884 (1952).

I simply cannot agree. Even though the present board decision is reversed, this does not necessarily mean, of course, that appellant will obtain a patent on these claims, since it is well settled that *res judicata* does *not* apply in the usual sense *against* the Patent Office. See, e. g. Jeffrey Mfg. Co. v. Kingsland, 86 U.S.App.D.C. 13, 179 F.2d 35 (1949).[2] Thus, the public may yet be "unjustly enrich[ed]," notwithstanding the majority effort to prevent it, and *litigation* in the Federal courts to obtain these claims *in dispute* may truly become virtually "endless."

In In re Szwarc, 319 F.2d 277, 280–281, 50 CCPA 1571, 1575–1576 (1963),

this court stated the twofold requirements of *res judicata* as follows:

> The first requirement of *res judicata* is that the second suit must involve the same parties or their privies. Commissioner v. Sunnen, 333 U.S. 591, [68 S.Ct. 715, 92 L.Ed. 898]. * * *

> The second requirement of *res judicata* is identity of issues. If the second action between the same parties or privies is upon the same claim or demand, the judgment in the prior action operates as an absolute bar to relitigation not only of those matters actually determined in the prior suit but also any other matter which might have been acted upon in the prior suit. Cromwell v. County of Sac, 94 U.S. 351 [24 L.Ed. 195]. * * *

In the case at bar, we obviously have the same parties as those before this court in the first *Herr* case. The ultimate issues of patentability on the merits of the presently appealed, and previously adversely adjudicated, claims to appellant and obviousness of the claimed subject matter in view of the Herr et al. patent No. 2,769,019 under 35 U.S.C. § 103 are the identical ultimate issues which were presented to, and finally decided by, this court in the first *Herr* case. Thus both requirements of the legal doctrine of *res judicata* are fulfilled in this case, and the Patent Office refusal to grant appellant a patent on these previously adversely adjudicated claims should be sustained by this court, unless the "identity of issues" requirement means that the specific issues of evidentiary fact must be identical, as well as the general issues of ultimate fact and law. This would transform the second requirement of *res judicata* into an identity of *records* requirement, as opposed to the identity of *issues* requirement. As I read the majority opinion, this is exactly the interpretation placed

---

2. See also In re Citron, 326 F.2d 418, 51 CCPA 869, (1964). If the Patent Office had *lost* the first *Herr* case, however, rather than won it, then *res judicata* would indeed apply against the Office

with respect to a rejection involving the same claims, the same prior art reference, and the same statutory ground of rejection, such as we have here.

on the second requirement, which effectively destroys the doctrine of *res judicata* insofar as ex parte patent cases are concerned. If *res judicata* requires identity of *records*, rather than merely identity of issues of ultimate fact and law, then the effect of the doctrine may always be overcome by filing, in conjunction with a new application, an affidavit showing commercial success or satisfaction of a long-felt need or want, or even merely filing copies of new patents or publications to show more completely the state of the art at the time the claimed invention was made.

If this is the majority view, I cannot agree that the issues of ultimate fact and law presented by the record of a case are inherently limited by that record, so that changing the record, even ever so slightly, necessarily changes the ultimate fact issues per se so that they are no longer identical, just as the specific issues of evidentiary or mediate fact are no longer identical because of the different record. See The Evergreens v. Nunan, 141 F.2d 927, 152 A.L.R. 1187, (2d Cir. 1944). See also Baenitz v. Ladd, 124 U.S.App.D.C. 237, 363 F.2d 969 (1966).

The public policy rationale expressed in the dissenting opinion in *Szwarc*, 319 F.2d at 288, 50 CCPA at 1585, is fully applicable here:

He [appellant] has had his day in court. * * * He now seeks a second day in court, urging us to set what would be an intolerable precedent of legal chaos and uncertainty by reviewing, indeed by reversing, a question which has already been decided by a court of competent jurisdiction. That we cannot do.

The case of Ex parte Gustavson, 14 USPQ 332 (Bd. Apls. 1932), relied on heavily by appellant below and to a lesser extent here, is similar to the *Fried* and *Szwarc* cases in that the issue in the first case was sufficiency of disclosure to support the claims of the parent application. As the board pointed out, the claims of the first Gustavson

case "were not held unpatentable on their merits but on the [formal] ground that they were not supported by the original disclosure." In contrast, there was no issue under 35 U.S.C. § 112 as to sufficiency of the specification disclosure to support the *claims* (as distinguished from the affidavit showing of unobviousness) of the first *Herr* case. The ultimate issue in that case was obviousness of the claimed subject matter under 35 U.S.C. § 103. That issue has been finally determined adversely to appellant and the determination may not be legally questioned unless the Patent Office waives its *res judicata* objection, which it has not chosen to do here.

Unlike the *Fried, Szwarc* and *Gustavson* cases, and like the *Barratt, Prutton,* and *Lundberg* cases, the issue in the first *Herr* case was one of patentability of the claims on the merits under 35 U.S.C. § 103, not sufficiency of supporting disclosure for the claims under 35 U.S.C. § 112. The rules and underlying public policy rationales of the latter group of precedents clearly dictate an affirmance in the present case on the ground of *res judicata*.

The "defects in the disclosure" of appellant's parent case, to which the majority refers, were certainly not defects under 35 U.S.C. § 112, in the ordinary patent sense of the word. The only "defect" was that the specification did not lay a foundation for consideration of the first Stafford *affidavit, not* that the original specification did not adequately support the *claims* under 35 U.S.C. § 112. As the board correctly pointed out in its opinion for the case at bar:

In the parent of the present application, on the other hand, there was never any question concerning the sufficiency of the disclosure of the claimed compounds. The claimed compounds were adequately disclosed, as well as the method of making them and their utility. It was a complete disclosure forming ample basis for adjudicating the patentability of the claims presented therein.

The majority stresses that none of the cited cases "is identical in every respect" to the present case. I do not find this particularly surprising, because of the extreme fact situation here. It is staggering to think that an applicant, subsequent to a final adjudication on the merits by a Federal appellate court adverse to patentability of his claims, would then proceed to file another application with the *same identical claims* in the Patent Office. What is even more staggering, however, is that the majority effectively waives the Patent Office right to reject these identical claims on the ground of *res judicata.* Perhaps not since the *Barratt* case at the turn of the century has a case appeared before a Federal appellate court presenting such an extreme fact situation with regard to applicability of the *res judicata* doctrine to ex parte patent cases. At least, in the *Prutton, Lundberg, Fried* and *Szwarc* cases, *different* claims were presented for adjudication in the continuation or continuation-in-part applications, although these cases mostly involved claims which were patentably indistinct from the claims previously adversely adjudicated in the respective parent cases, either on the merits with respect to the issue of obviousness under 35 U.S.C. § 103, or with regard to the formal issue of sufficiency of supporting disclosure for the claims under 35 U.S.C. § 112.

With respect to the *Gustavson* and *Schott* cases, the latter being no longer a viable precedent since it was "expressly repudiate[d]" and overruled by the board, sitting *en banc,* in Ex parte Budde, 150 USPQ 469 (1966), it is possible that the board, as an appellate tribunal *within* the Patent Office, may possess the requisite authority to waive *res judicata* rejections on behalf of the Office. Even if this should prove to be the case, the rationale would not apply to this court, which is in no way, shape, or form part of the Patent Office and has no authority from either Congress or the Commissioner to waive rights to which the Patent Office may be entitled,

such as the right to rely on the well-established legal doctrine of *res judicata* as a defense for its refusal to grant a patent in an appropriate case coming within the doctrine, such as this one.

While the majority speaks in terms of appellant's "right" to a patent on the presently appealed, and previously adversely adjudicated, claims, it is clear to me that this so-called "right" is *barred* by the final judgment of this court in the first *Herr* case. The different record, and especially the fact that the Patent Office now *temporarily* considers the claims to be unobvious in view of the new and different record in this case, is "immaterial." *In re Prutton,* supra. In the words of the famous Latin maxim of which *res judicata* are the opening words:

> *Res judicata facit ex albo nigrum; ex nigro, album; ex curvo, rectum, ex recto, curvum.* A thing adjudged makes white, black; black, white; the crooked, straight; the straight, crooked. 1 Bouv.Inst. no. 840.

While the majority views the provisions of the Manual of Patent Examining Procedure, § 706.03(w) as "irreconcilable," it is clear that the same, or substantially the same, claims do not present a significantly different issue of patentability, which is presented only when the new claims are patentably distinct from the old claims previously adversely adjudicated on the merits by an appellate tribunal. See *In re Prutton, In re Lundberg,* supra.

The majority expresses the view that affirmance of the *res judicata* rejection in this case would "unjustly enrich the public at the expense of the inventor, a result we feel confident Congress could not have intended." I am not at all confident about the Congressional intent to which reference is made, in the absence of items of legislative history, of which the majority cites none. It is interesting to note that this court, which recently possessed only *limited* appellate jurisdiction, has now, by majority fiat, become a court of *general* jurisdiction

with inherent *equity* powers to prevent unjust enrichment.

I am firmly of the opinion that waiver of *res judicata* is discretionary with the Commissoner and that he may delegate this discretion in the first instance to the primary examiners. If the examiner abuses his discretion by refusing to waive the doctrine in an appropriate case calling for such waiver, then the remedy lies in a petition to the Commissioner to exercise his supervisory authority over the examiner. Ultimate review of the Commissioner's discretionary actions, upon eventual exhaustion of available administrative remedies, may be had in District Court under the Administrative Procedure Act, 5 U.S.C. § 1009. My point is that waiver of, or refusal to waive, the *res judicata* doctrine is a *discretionary* matter, reviewable by equitable petition and not by legal appeal. Thus neither the board nor this court should consider the equitable issue of whether the circumstances of this case make the examiner's refusal to waive the doctrine of *res judicata* an abuse of discretion on his part. Although no express or implied waiver of the doctrine by the Patent Office can possibly be found on the record of this case, the majority effectively holds that the Commissioner or his authorized representative, the primary examiner, *ought to have waived* the doctrine, and that their refusal to do so in effect amounts to an arbitrary and capricious abuse of discretion, since it leads to unjust enrichment of the public. I do not think that this court should consider such issues as abuse of discretion and associated unjust enrichment, since such questions are clearly beyond the scope of our strictly *limited* jurisdiction. See In re Wiechert, 370 F.2d 927, 54 CCPA 957.

The "somewhat exaggerated fears of the Patent Office" which the majority is "inclined to discount" are well and appropriately stated by the board as follows:

Moreover, if appellant's position were adopted, it would permit an applicant to present a claim to a compound based upon a particular disclosure of properties and utility and, upon rejection in view of prior art, to prosecute such claim to an appellate decision. If unsuccessful, he could then file a new case with the identical compound claim but disclosing additional properties and utility and insist on unobviousness by virtue of this added material. Unsuccessful in his second attempt to obtain a patent, he could then file a third application with the same claim but with new disclosure of properties and utility. This procedure could be continued until he finally found some aspect which would serve to [patentably] distinguish from the prior art. We do not regard this recital as a *reductio ad absurdum*, but as a practical illustration of the endless litigation which *res judicata* is designed to prevent.

The majority is unable "to see why, as a practical matter, an applicant would deliberately" resort to the procedure here authorized. The most obvious reason is to delay issuance of the patent as long as possible, in order to complete testing and development work on the new invention and establish a commercial market therefor. As stated in Woodling, "Inventions and Their Protection," Second Edition (1954), pp. 312–3:

There are some inventors who purposely seek delay. At first glance such a course may seem ill-advised in view of the fact that there is no protection until the patent is granted. * * * However, there actually are many advantages to be gained in protracting the prosecution which may greatly outweigh the disadvantages of not being able to sue infringers during the pendency of the application. The most obvious reason for delay is to cause the 17-year term of the patent to coincide with the manufacturing period which will produce the maximum financial return. This observation is particularly true where the invention is born before its time.

Another reason for delay is to give the inventor sufficient time for ex-

periment and consultation before his patent issues. * * *

* * * * * *

Besides affording an opportunity for experiment, delay makes it possible for the inventor to analyze the construction of competing devices and to make his patent cover features of the competitor's device which are common to those shown in his application.

* * *

As a classic example of an invention "born before its time," for which deliberately delayed prosecution in the Patent Office was most advantageous, Woodling states the following at pp. 306–307:

The longest prosecution on record took 36 years. On October 22, 1880, Charles F. Fritts, an inventor, filed a patent application for a method of recording and reproducing soound (the modern sound movie) by a photographic process * * *. It was a meritorious invention. On October 31, 1916, after a period of more than 36 years, the Patent Office granted the Letters Patent.

Obviously, there was a much greater market imminent for sound movies in 1916 than in 1880. I do not believe that sound public policy favors encouraging an attorney to put his *worst* foot forward in representing his clients' interests in the initial stages of patent application prosecution. Yet this is exactly what the majority decision encourages. Attorneys will now be well advised to hold back their best evidence in reserve until it is in their clients' interests to allow their patents to issue, after a sufficient period of deliberate delay in prosecution. In the interim, attorneys may present first their *weakest* evidence of patentability to the Patent Office, and remain safe and secure in the knowledge that, even if an appellate court decision adverse to patentability of the claims on the merits under 35 U.S.C. § 103 is obtained, a new application may still be filed with the same identical claims and somewhat stronger evidence of patentability submitted, retaining the best evidence thereof in reserve until it is in the clients' best interests to allow patents to issue on their applications.

The "overriding reason" stated by the majority for reaching the result here "is that Congress has authorized the course appellant has followed, and doubtless expects compliance by the Patent Office and the courts," citing 35 U.S.C. § 120.

I am sure it would come as quite a surprise to the drafters of the Patent Act of 1952 to learn that section 120 must be interpreted as abolishing the *res judicata* doctrine in ex parte patent cases. In identical language the House Report No. 1923, 82nd Congress, 2d Session (1952), p. 20, and Senate Report No. 1979, 82nd Congress, 2d Session (1952), p. 20, both read as follows with respect to section 120, U.S.Code Cong. & Admin. News 1952, p. 2394:

This section represents present law not expressed in the statute, except for the added requirement that the first application must be specifically mentioned in the second.

The Reviser's Note, 35 U.S.C.A. § 120, reads the same as above. See also Federico, "Commentary on the New Patent Act," 35 U.S.C.A. pp. 31–33 (1954).

In view of the clear legislative history of section 120 to the effect that it is mere codification of "present [case] law" which prior to 1952 was "not expressed in the statute," it is beyond my comprehension how the majority can possibly interpret this section as evidence of Congressional intent to abolish the well-established legal doctrine of *res judicata* in ex parte patent cases. Obviously, a new application may be filed with *new* claims which are patentably distinct from the previously adversely adjudicated claims. See *In re Prutton, In re Lundberg,* supra. Likewise, if an adverse appellate tribunal decision on the merits is avoided, a new application may be filed with new evidence of patentability for the *same* claims that were finally rejected by the examiner in the previous case. Appellant could have pursued this procedure *instead* of taking an

appeal in his first case. *In re Fried*, supra. But the doctrine of *res judicata*, if not waived, manifestly precludes the obtaining of a patent on a new application with the *same* claims which were previously adversely adjudicated in a final decision on the merits under 35 U.S.C. § 103 by a Federal appellate court, as here, regardless of whether the new case is a continuation, *In re Lundberg*, supra, or continuation-in-part application, *In re Prutton*, supra, and regardless of whether new evidence of patentability is made of record in the second or continuation-in-part application. *In re Barratt's Appeal, In re Prutton*, supra. Since the above-cited cases, especially *Barratt* and *Overland*, reflect "present [case] law" at the time of enactment of the Patent Act of 1952, I am unable to read 35 U.S.C. § 120 as abolishing the then existing case law on the applicability of the *res judicata* doctrine to ex parte patent cases. See Weeks v. Warp, 95 U.S.App.D.C. 235 221 F.2d 108, (D.C. Cir. 1955), which, like *Prutton* and *Lundberg*, was decided subsequent to enactment of the 1952 Act.

I also note with interest the following statement which appears in In re Lundberg, 280 F.2d at 872, 47 CCPA at 1148–1149:

> With respect to appellants' general allegation that they were entitled to have their [continuation] application passed on according to the law as set forth in the Patent Act of 1952, our review convinces us that the applications have been so treated at all times subsequent to the effective date [January 1, 1953] of that act. The applications formerly before us were certainly so treated in this court [in accord with the "present law"]. However, we did not always agree with appellants on the construction of various provisions of that act, nor do we now.

Apparently, the majority view of this court as to the effect of the Patent Act of 1952 on applicability of the legal doctrine of *res judicata* to ex parte patent cases has completely changed since the *Lundberg* case was decided in 1960.

In contrast, the position of the Court of Appeals for the District of Columbia Circuit with regard to this doctrine has remained substantially constant, at least from the 1899 *Barratt* case to the 1955 *per curiam* decision in Weeks v. Warp, supra.

For the reasons stated above, I would affirm the decision of the board on the ground of *res judicata*.